## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into effective December _10_, 2021 (the "Effective Date") between the State of Ohio, *ex rel.*, Dave Yost, Ohio Attorney General (the "Attorney General"); and Daniel J. Beers personally ("D. Beers"), Cost Sharing Solutions LLC ("CSS"), Daniel Beers II personally ("D. Beers II"), Ronald Beers personally ("R. Beers"), Brandon Fabris personally ("B. Fabris"), The Medical Cost Savings Solution, Ltd. ("MCS"), Thomas Fabris personally ("T. Fabris"), Barat Consulting, LLC ("Barat Consulting"), and Scott Barat personally ("S. Barat") (D. Beers, CSS, D. Beers II, R. Beers, B. Fabris, MCS, T. Fabris, Barat Consulting, and S. Barat, collectively, constituting the "Vendor Parties").

In consideration of the mutual promises and obligations contained in this Agreement, the Attorney General and the Vendor Parties enter into this Agreement and agree as follows:

1.  Parties and Predicate.

    A.  The Attorney General has authority for enforcing charitable trusts and overseeing charitable solicitations in the State of Ohio pursuant to the Ohio Charitable Organizations Act, R.C. 1716.01 *et seq.*, the Ohio Charitable Trust Act, R.C. 109.23 *et seq.*, and Ohio common law.

    B.  National Coalition of Health Care Sharing Ministries, Inc. ("National Coalition") was an Ohio nonprofit corporation whose principal place of operations was 4845 Fulton Drive NW, Canton, Ohio 44718. On June 29, 2021, National Coalition filed a Certificate of Dissolution with the Ohio Secretary of State.

    C.  Gospel Light Mennonite Church Medical Aid Plan, Inc. ("Gospel Light"), is a Virginia Non-Stock corporation whose principal place of operations is 4845 Fulton Drive NW, Canton, Ohio 44718.



EXHIBIT
A

D.  Gospel Light has been recognized by the Centers for Medicare & Medicaid Services ("CMS") as a healthcare sharing ministry under Section 5000A(d)(2)(B)(ii) of the Affordable Care Act.

E.  National Coalition and Gospel Light either are or were "charitable organizations" as that term is defined in R.C. 1716.01(A) and "charitable trusts" as that term is defined in R.C. 109.23.

F.  Gospel Light has 501(c)(3) status under the Internal Revenue Code. Prior to its dissolution, National Coalition had 501(c)(3) status under the Internal Revenue Code.

G.  Either individually or jointly, National Coalition and/or Gospel Light have been operating a healthcare sharing ministry beginning no later than 2014 under the name "Liberty HealthShare."

H.  Members of Liberty HealthShare make "contributions" as that term is defined in R.C. 1716.01(E).

I.  National Coalition and Gospel Light have been engaged in "solicitation" as that term is defined in R.C. 1716.01(K)(1).

J.  D. Beers resides in Stark County, Ohio. D. Beers previously held the position of Member Development Partner for Liberty HealthShare.

K.  CSS is an Ohio for-profit limited liability company formed by D. Beers II and B. Fabris and currently owned 100%, collectively, by D. Beers II, B. Fabris, and R. Beers. Since 2014, CSS has provided marketing and promotional services for Liberty HealthShare, including the operation of a call center.

L.  CSS's principal place of business is 2824 Woodlawn Ave. NW, Canton, Ohio 44708. D. Beers II, B. Fabris, and R. Beers all reside in Stark County, Ohio.

M. MCS is an Ohio for-profit limited liability company formed and currently owned 100% by T. Fabris. Since 2015, MCS has contracted with National Coalition and/or Gospel Light to provide repricing, medical discount, bill negotiations and bill clearing house services for the benefit of Liberty HealthShare members.

N. MCS's principal place of business is 2824 Woodlawn Ave. NW, Canton, Ohio 44708. T. Fabris resides in Stark County, Ohio.

O. Barat Consulting is an Ohio for-profit limited liability company formed and currently owned 100% by S. Barat. Barat Consulting has received payments from both CSS and MCS and has made payments to D. Beers.

P. Barat Consulting's principal place of business is 608 Highland Ave., Barberton, Ohio 44203. S. Barat resides in Stark County, Ohio.

Q. R. Beers, B. Fabris, D. Beers II, and CSS have engaged in solicitation as that term is defined in R.C. 1716.01(K)(1) on behalf of and/or in relation to Liberty HealthShare. CSS continues to engage in solicitation as that term is defined in R.C. 1716.01(K)(1).

R. CSS has acted and continues to act as a "professional solicitor" as that term is defined in R.C. 1716.01(J) on behalf of and/or in relation to Liberty HealthShare.

S. Pursuant to his statutory and common law authority, and in his role as parens patriae to protect the intended beneficiaries of charitable trusts including, but not limited to, current and former members of Liberty HealthShare, the Attorney General directed that the Charitable Law Section of the Ohio Attorney General's Office investigate the acts and omissions of various individuals and entities, including the Vendor Parties, to ascertain whether, under R.C. 109.24 and common law, the property held or controlled by Gospel Light and/or National Coalition for charitable purposes has been and is being

properly administered in accordance with R.C. Chapter 109 and Ohio common law, and whether the requirements of R.C. Chapter 1716 regarding the conduct of charitable solicitations were satisfied relating to Liberty HealthShare (the "Charitable Investigation"). The Charitable Investigation commenced in January 2018 and encompassed any and all claims, causes of actions, legal theories, remedies at law or in equity, or other forms of relief under the authority of the Attorney General pursuant to R.C. 109.24, R.C. Chapter 1716, and under common law as it relates to the administration of charitable trusts, including, but not necessarily limited to claims to recover excess benefits or compensation from the Vendor Parties under the common law, the use or misuse of charitable funds, breaches of fiduciary duty, any claims predicated on violations of R.C. Chapter 1716, or any other claims predicated on an abuse of charitable trust under R.C. 109.24, or any alleged relationship between the Vendor Parties or their principals or agents and Liberty HealthShare, including but not limited to any conspiracy to commit any of the above-referenced acts (the "Potential Charitable Claims and Causes of Action").

T.  Through the Charitable Investigation, with the initial belief that the Vendor Parties violated Ohio law, the Attorney General sought, in part, to collect monies from the Vendor Parties from the amounts they were paid by Liberty HealthShare, for the benefit of the intended charitable beneficiaries of Liberty HealthShare.

U.  The Attorney General and the Vendor Parties have been engaged in good faith negotiations since April 2021 in an effort to resolve all issues, allegations and/or claims arising out of or related to the Charitable Investigation or the Potential Charitable Claims

and Causes of Action and now wish to finally and fully resolve these issues, allegations, and/or claims pursuant to the terms of this Agreement.

2.    CSS to register as a professional solicitor.

    A.  Within 60 days of the Effective Date, CSS shall take all steps necessary to register as a professional solicitor with the Charitable Law Section of the Ohio Attorney General's Office pursuant to R.C. 1716.07 and any rules adopted thereunder.

    B.  Following the date of its initial registration pursuant to Paragraph 2.A, CSS shall comply with the requirements for and be subject to the laws applicable to professional solicitors, including as set forth in R.C. Chapter 1716 and any rules adopted thereunder.

3.    Cost and Fees, Payments, and Civil Penalty.

    A.  The Vendor Parties agree to pay the Attorney General ███████████████ ██████████████ for the reasonable costs of investigation and ███████████ ███████████████████████ for reasonable attorneys' fees incurred in conjunction with the Charitable Investigation (collectively, the "Cost and Fees Amount"). The Costs and Fees Amount shall be paid by wire transfer with receipt acknowledged, or by cashier's check or money order payable to "Treasurer, State of Ohio" and delivered to:

> Ohio Attorney General
> Charitable Law Section
> Attn: Chief Accountant
> 30 E. Broad St., 25th Floor
> Columbus, OH 43215

The Cost and Fees Amount shall be paid within 3 business days of the execution of this Agreement. Within two business days of receiving notice that the Vendor Parties intend to pay the Cost and Fees amount by wire transfer, the Attorney General shall provide

to counsel wire transfer instructions. The Attorney General shall deposit the Cost and Fees Amount into the charitable law fund established under R.C. 109.32.

B.  The Vendor Parties further agree to pay the amount of ███████████████████ ████████████████████████████ (the "Payments"). The Payments shall be paid by wire transfer with receipt acknowledged, or by cashier's check or money order payable to "Treasurer, State of Ohio" and delivered to:

> Ohio Attorney General
> Charitable Law Section
> Attn: Chief Accountant
> 30 E. Broad St., 25th Floor
> Columbus, OH 43215

Within two business days of receiving notice that the Vendor Parties intend to pay a Payment by wire transfer, the Attorney General shall provide to counsel wire transfer instructions. The Payments shall be paid according to the following schedule:

i.  ██████████████████████████████ shall be paid within 90 days of the Effective Date;

ii.  ██████████████████████████████ shall be paid on or before July 15, 2022;

iii.  ██████████████████████████████ shall be paid on or before January 15, 2023;

iv.  ██████████████████████████████ shall be paid on or before July 15, 2023;

v.  ██████████████████████████████ shall be paid on or before January 15, 2024;

vi.  shall be paid

on or before July 15, 2024;

vii. ███████████████████████ shall be paid

on or before January 15, 2025;

viii. ███████████████████████ shall be paid

on or before July 15, 2025;

ix. ███████████████████████ shall be paid

on or before January 15, 2026;

x. ███████████████████████ shall be paid

on or before July 15, 2026; and

xi. ███████████████████████ shall be paid

on or before January 15, 2027.

The Payments shall be deposited into the Attorney General's R004 fund, a non-operating fund established by the General Assembly for the purpose of administering court orders and settlements on behalf of the Attorney General, and shall be accounted for separately within the R004 fund. The Payments shall be redistributed by the Attorney General, in his sole discretion, to or for the ultimate benefit of current or former members of Liberty HealthShare for the Potential Charitable Claims and Causes of Action.

C. The Vendor Parties further agree to pay a civil penalty in the amount of ████████ ████████████████████████ (the "Civil Penalty"). The Civil Penalty shall be paid by wire transfer with receipt acknowledged, or by cashier's check or money order payable to "Treasurer, State of Ohio" and delivered to:

Ohio Attorney General
Charitable Law Section
Attn: Chief Accountant
30 E. Broad St., 25th Floor
Columbus, OH 43215

Within two business days of receiving notice that the Vendor Parties intend to pay the Civil Penalty by wire transfer, the Attorney General shall provide to counsel wire transfer instructions. The Attorney General shall deposit the Civil Penalty into the charitable law fund established under R.C. 109.32. The Civil Penalty shall be paid according to the following schedule:



i.  ███████████████████ shall be paid on or before March 15, 2022;

ii.  ███████████████████ shall be paid on or before November 15, 2022;

iii.  ███████████████████ shall be paid on or before March 15, 2023;

iv.  ███████████████████ shall be paid on or before November 15, 2023;

v.  ███████████████████ shall be paid on or before March 15, 2024;

vi.  ███████████████████ shall be paid on or before November 15, 2024;

vii.  ███████████████████ shall be paid on or before March 15, 2025;



viii. ███████████████████████ shall be paid on or before November 15, 2025;

ix. ███████████████████████ shall be paid on or before March 15, 2026; and

x. ███████████████████████ shall be paid on or before November 15, 2026.

D. D. Beers, CSS, D. Beers II, B. Fabris, R. Beers, MCS, T. Fabris, Barat Consulting, and S. Barat agree that they are jointly and severally liable for the Cost and Fees Amount, the Payments, and the Civil Penalty.

E. Upon written notice to the Attorney General pursuant to Paragraph 5.C, the Vendor Parties may make early lump sum payments towards any of the payment obligations in this Agreement and it shall apply to the next payment due and owing.

F. If the Vendor Parties fail to comply with any of the payment requirements in this Agreement, then the Attorney General may certify any and/or all unpaid balances to the Ohio Attorney General's Collections Enforcement Section ("Collections") for collection. In the event of certification, the Vendor Parties agree to pay additional collection costs assessed by Collections in accordance with R.C. 131.02(A) equal to the amounts charged pursuant to R.C. 109.08 and 109.081 for the cost of certification and the use of Special Counsel for the collection of the debt. Interest shall also be charged upon certification in accordance with R.C. 131.02(D). Nothing in this paragraph shall be construed to limit the Attorney General's discretion or authority to pursue any other available remedy.

4. <u>Forbearance, Releases, and Reservation of Rights.</u>

    A. The Attorney General shall initiate no litigation against the Vendor Parties arising from or related to the Charitable Investigation or the Potential Charitable Claims and Causes of Action so long as the Vendor Parties strictly comply with all of the payment requirements in Paragraphs 3.A, 3.B, and 3.C of this Agreement.

    B. The Vendor Parties agree that any statute of limitations applicable to any claim or cause of action of the Attorney General's arising from or related to the Charitable Investigation or the Potential Charitable Claims and Causes of Action shall be tolled, as of the Effective Date, until July 15, 2027 or upon the date in which all payments under this Agreement have been paid in full, whichever is earlier.

    C. Upon receipt of payment in full of the Cost and Fees Amount, the Payments, and the Civil Penalty, along with any additional amounts as set forth in Paragraph 3.F, if applicable, the Attorney General, in his role as parens patriae to protect the intended beneficiaries of charitable trusts including, but not limited to, current and former members of Liberty HealthShare, hereby agrees to fully and completely release the Vendor Parties for any and all acts or omissions from any and all claims and causes of action of any nature or any kind, both known and unknown, arising from or related to the Charitable Investigation or the Potential Charitable Claims and Causes of Actions occurring prior to the Effective Date.

    D. Nothing in this Agreement shall be construed to release any of the Vendor Parties from their obligations under this Agreement. Nothing in this Agreement shall be construed to release any of the Vendor Parties from any claims or causes of action based on acts or omissions occurring after the Effective Date except that the Attorney General shall not

have a cause of action or claim related to the current compensation as outlined under the current contracts between the Vendor Parties and Liberty HealthShare.

E. Nothing in this Agreement shall be construed to release or affect in any way any rights, claims, or causes of action the Attorney General may have against any individual or entity other than the Vendor Parties arising from or related to the Charitable Investigation. Nothing in this Agreement shall be construed to prevent or limit in any way the Attorney General's ability to seek information, documents, or testimony from any of the Vendor Parties in conjunction with the Charitable Investigation or any litigation by the Attorney General arising from or related to the Charitable Investigation.

F. Except for the Potential Charitable Claims and Causes of Action, nothing in this Agreement shall be construed to release or affect in any way any rights, claims, or causes of action of any other agencies of the State of Ohio or any sections of the Attorney General's Office other than the Charitable Law Section. Nothing in this Agreement shall be construed to release or affect in any way any rights, claims, or causes of action arising out of or relating to the final judgment, entered on March 29, 2005, in the civil action captioned *Barberton Rescue Mission, et al., v. Bruce E. Hawthorn, et al.,* Case No. CV-2000-12-5496, in the Summit County Court of Common Pleas.

5. Miscellaneous.

A. The parties shall execute and deliver such further instruments and documents and take such other actions as may reasonably be requested and required to perform their obligations under this Agreement.

B. Attorney General agrees to apply the reporting requirements of IRC Section 6050X and related regulations, et al. regardless of the effective, binding date of this Agreement, as

they pertain to the reporting of amounts required for compliance with this IRC Section for application of compliance with the identification and establishment requirements of 26 U.S.C. 162(f) et seq. affording Vendor Parties the ability for payments made under paragraph 2.B. above, to claim as a federal tax deduction as enumerated above as part of this Agreement and by reporting such payments to the IRS in Box 2 of the IRS Form 1098-F.

C. Any notice required or provided under this Agreement shall be effective when sent as follows:

    i. To the Vendor Parties, c/o Laura Mills, at lmills@lawyerswithstrategy.com, with a copy to Rick Arnold, at rarnold@asalawfirm.com and Nathan Garrett, at NGarrett@gravesgarrett.com; and

    ii. To the Attorney General, c/o Daniel Fausey, Section Chief, Charitable Law Section at Daniel.Fausey@OhioAGO.gov, with a copy to Attorney General, Charitable Law Section, Attention: Section Chief, 30 E. Broad St., 25th Floor, Columbus, Ohio 43215.

Any party may change its notice party and/or contact information by providing written notice to the Attorney General and all Vendor Parties according to this Agreement.

D. This Agreement is entered into in the State of Ohio and will be governed under the laws of the State of Ohio.

E. The parties acknowledge and agree that all matters relating to the enforcement and interpretation of this Agreement shall be subject to the jurisdiction of the Franklin County, Ohio Common Pleas Court pursuant to O.R.C. 109.16.

F. All parties acknowledge that they have been given ample opportunity to be advised by legal counsel of their own choosing as to the meaning and effect of each provision of this Agreement and that they have knowingly and voluntarily elected to enter into this Agreement. The parties agree to sign this Agreement as their own voluntary act and deed, and each represents that such execution was not the result of any duress, coercion, or undue influence upon either of them. The parties hereby acknowledge receipt of a copy of this Agreement before signing it and understand that each and every provision of this Agreement is contractual, legally binding, and not mere recitals.

G. In the event that any provision of the Agreement is deemed to be invalid or unenforceable, the remaining provisions will remain intact and enforceable as stated, provided that doing so provides the same or similar consideration to the parties.

H. This Agreement represents the entire understanding of the parties with respect to the subject matter contained herein. The Agreement may be modified only in writing signed by all parties.

I. This Agreement may be signed in counterparts which, when taken together, will constitute a single integrated document. Signed copies of the Agreement sent by electronic means will be considered to be the same as original signed versions.

J. Each party has cooperated in (and in any construction to be made of this Agreement shall be deemed to have cooperated in) the drafting and the preparation of this Agreement.

K. Each individual signing below represents that he or she is authorized and directed to sign this Agreement on behalf of the representative party and further represents that he or she has the requisite authority to bind the party on behalf of whom they are signing.

SETTLEMENT AGREEMENT– Page 14 of 15

L.  The Parties agree that the execution of this Agreement is done for the purposes of compromise, and to eliminate the burden of expense of further litigation, and does not constitute, and shall not be construed as, an admission of liability, wrongdoing, fault, judgment or concession, or as evidence with respect thereto, by any of the Vendor Parties, on account of any claims or matters and any such liability being specifically denied.

**(remainder of this page intentionally left blank / signature page follows)**

SETTLEMENT AGREEMENT– Page 15 of 15

This Agreement is being executed by the parties as of the Effective Date.

DANIEL J. BEERS, in his personal capacity

_____
Signature

DANIEL BEERS II, in his personal capacity

_____
Signature

BRANDON FABRIS, in his personal capacity

_____
Signature

RONALD BEERS, in his personal capacity

_____
Signature

THOMAS FABRIS, in his personal capacity

_____
Signature

SCOTT BARAT, in his personal capacity

_____
Signature

COST SHARING SOLUTIONS, LLC

_____
Representative's Signature

Daniel  J Beers II   MEMBER
Printed name and title

THE MEDICAL COST SAVINGS
SOLUTION, LTD.

_____
Representative's Signature

Thomas A. FABRIS   CEO
Printed name and title

BARAT CONSULTING, LLC

_____
Representative's Signature

Scott Barat  , Member
Printed name and title

DAVE YOST,
OHIO ATTORNEY GENERAL

_____
Daniel W. Fausey
Section Chief
Charitable Law Section
30 E. Broad St., 25th Fl.
Columbus, OH 43215