## <u>SETTLEMENT AGREEMENT</u>

This Settlement Agreement ("<u>Agreement</u>") is entered into effective March 15, 2021 (the "<u>Effective Date</u>") between the State of Ohio, *ex rel*., Dave Yost, Ohio Attorney General (the "<u>Attorney General</u>"), and National Coalition of Health Care Sharing Ministries, Inc. ("<u>National Coalition</u>"), Gospel Light Mennonite Church Medical Aid Plan, Inc. which does business as "Liberty HealthShare" ("<u>Gospel Light</u>"), Druzilla Abel personally ("<u>Abel</u>"), Dale Bellis personally ("<u>Bellis</u>"), and Larry Foster personally ("<u>Foster</u>") (National Coalition, Gospel Light, Abel, Bellis, and Foster, collectively, constituting the "<u>Liberty Parties</u>").

**In consideration** of the mutual promises and obligations contained in this Agreement, the Attorney General and National Coalition, Gospel Light, Abel, Bellis and Foster enter into this Agreement and agree as follows:

1. <u>Parties and Predicate</u>.

   A. Either individually or jointly, National Coalition and/or Gospel Light have been operating a healthcare sharing ministry beginning no later than 2014 under the name "Liberty HealthShare."

   B. The Attorney General has authority for enforcing charitable trusts and overseeing charitable solicitations in the State of Ohio pursuant to the Ohio Charitable Organizations Act, R.C. 1716.01 *et seq*., the Ohio Charitable Trust Act, R.C. 109.23 *et seq*., and Ohio common law.

   C. National Coalition is an Ohio nonprofit corporation whose principal place of operations is 4845 Fulton Drive NW, Canton, Ohio 44718.

   D. Gospel Light is a Virginia Non-Stock corporation whose principal place of operations is 4845 Fulton Drive NW, Canton, Ohio 44718.

# EXHIBIT A

E.  National Coalition and Gospel Light each have 501(c)(3) status under the Internal Revenue Code.

F.  National Coalition and Gospel Light are "charitable organizations" as that term is defined in R.C. 1716.01(A) and "charitable trusts" as that term is defined in R.C. 109.23.

G.  National Coalition and Gospel Light have engaged in "solicitation" as that term is defined in R.C. 1716.01(K)(1).

H.  Pursuant to his statutory and common law authority, the Attorney General directed that the Charitable Law Section of the Ohio Attorney General's Office investigate under R.C. 109.24 whether the property held by Gospel Light and/or National Coalition for charitable, religious or educational purposes has been and is being properly administered in accordance with fiduciary principles as established by the courts and statutes of this state and whether Gospel Light and/or National Coalition have properly complied with the requirements of R.C. Chapter 1716 regarding the conduct of charitable solicitations (the "Charitable Investigation").

I.  The current board members of the National Coalition are Dale Bellis, Druzilla Abel, Durlin Beachy, and Everett Yoder.

J.  The current board members of Gospel Light are Durlin Beachy, Don Brewer, Scot Burris, Ryan Mast, and Everett Yoder.

K.  Gospel Light has been recognized by Centers for Medicare & Medicaid Services ("CMS") as a healthcare sharing ministry under Section 5000A(d)(2)(B)(ii) of the Affordable Care Act.

L.  Gospel Light registered the trade name "Liberty Healthshare" with the Ohio Secretary of State on or about June 15, 2015, with a date of first use of November 15, 2014.

M.  In December 2018, National Coalition transferred substantially all of its assets to Gospel Light for the purpose of benefiting the health care sharing ministry and the membership of Gospel Light.  National Coalition and Gospel Light represent that they were unaware of the Charitable Investigation until after the asset transfer.  Gospel Light's Board of Directors has approved returning a portion of the previously transferred assets in an amount sufficient for National Coalition to pay the civil penalty agreed to by National Coalition as part of this settlement with the Attorney General.

N.  Beginning no later than January 1, 2021, National Coalition has had no employees or ongoing operations and Liberty HealthShare is being operated exclusively by Gospel Light.

O.  Abel is the current Chief Executive Officer of Gospel Light, previously served for multiple years and simultaneously as a board member, board secretary, Chief Operating Officer of both National Coalition and Gospel Light, and was listed as a vice president of both National Coalition and Gospel Light in certain filings with the Internal Revenue Service and the Charitable Law Section of the Ohio Attorney General's Office.  She resides in Stark County, Ohio.

P.  Bellis is described as the founder of Liberty HealthShare and previously served for multiple years and simultaneously as a board member, President and Executive Director of both National Coalition and Gospel Light.  He resides in Stark County, Ohio.

Q. Foster was previously a board member and Chief Executive Officer of both National Coalition and Gospel Light.  He resides in Marion County, Indiana.

R. On the basis of the Charitable Investigation, the Attorney General believes that one or more of the Liberty Parties have, through their acts and/or omissions, violated Ohio law relating to the charitable trust and/or solicitation activities of National Coalition and Gospel Light.

S. Each of the Liberty Parties denies that, through their acts and/or omissions, they have violated Ohio law relating to the charitable trust and/or solicitation activities of National Coalition and Gospel Light.

T. The Attorney General and the Liberty Parties wish to resolve all issues, allegations and/or claims between and among them arising out of the Charitable Investigation.

U. All parties agree that neither execution or performance of this Agreement by Gospel Light, National Coalition, Abel, Bellis, or Foster shall constitute an admission of any wrongdoing or violations of law by any of them.

2. <u>Dissolution of National Coalition</u>.

A. On or before June 30, 2021, National Coalition shall make best efforts to complete and file all documents with, and pay any necessary fees to, the Ohio Secretary of State, the Attorney General, the Internal Revenue Service, and any other Federal or State agency necessary to formally dissolve National Coalition.  National Coalition shall timely provide copies of these documents to the Attorney General, as directed.  In no event shall dissolution and payment be completed later than August 31, 2021.

B. National Coalition and Gospel Light, jointly and separately, represent and warrant that any and all documents or records, in whatever form, currently in the care, custody or

control of National Coalition relating to the formation, operation, governance, finances and/or service to members of National Coalition and/or Gospel Light either have been or will be preserved in the care, custody and/or control of Gospel Light.

C. Assets of National Coalition suitable for distribution to and/or use by another healthcare sharing ministry shall go only to Gospel Light.

3. <u>Board Membership for Gospel Light</u>.

A. Following the Effective Date, Bellis, Foster, and Abel are prohibited from serving in any capacity on the Board of Directors of Gospel Light.

B. Within 120 days after the Effective Date, Gospel Light's Board of Directors shall appoint two new, outside and independent Board Members with expertise or experience in health care claims administration, law, finance or accounting, or business management. Prior to appointment, Gospel Light will identify the proposed board candidates to the Attorney General, for review of the independence and qualifications by the Attorney General. The Attorney General reserves the right to reject proposed Board candidates by providing notice of rejection to Gospel Light no later than 15 business days after receiving written notice of that individual's nomination. For purposes of this Paragraph and the remainder of this Agreement, the term "<u>independent</u>" shall mean the absence of any pre-existing professional or familial relationship with any of the Liberty Parties (other than as Liberty HealthShare members), any current or former board members of Gospel Light or National Coalition, The Medical Cost Savings Solution, Ltd., SavNet International, LLC, Cost Sharing Solutions, LLC, any of the owners of the preceding three entities, or any other entity with common ownership to any of these three entities.

4.    <u>Senior Level Executive Reporting</u>.

    A.  Beginning no later than the Effective Date and continuing through January 24, 2022, the positions, or the future functional equivalents, of Chief Financial Officer and Chief Legal Counsel for Gospel Light, currently held by Stephen Furst and Steven Yashnik respectively, shall report directly to the Board of Directors of Gospel Light and not to the Chief Executive Officer.  On or after January 25, 2022, all terms of employment or decisions relating to employment for the positions of Chief Financial Officer and Chief Legal Counsel, or the future functional equivalents, shall be set or made by the Board of Directors of Gospel Light, but those positions may otherwise report to the Chief Executive Officer if and as the Board directs.

5.    <u>Auditing Firm and Practices</u>.

    A.  Upon the completion of Gospel Light's annual filings with the IRS and Attorney General and accounting audit for fiscal year 2020, Gospel Light shall disengage and thereafter permanently refrain from engaging its current auditing firm, Sullivan & Company, LLC, for those same services.

    B.  Subject to Paragraph 5.A, Gospel Light shall retain a new and independent auditing firm for all audit engagements, including but not limited to the annual filings with the IRS and Attorney General and accounting audit for fiscal year 2021 and thereafter.  The new auditing firm shall be selected by Gospel Light's Board of Directors, in consultation with the Chief Financial Officer, through a competitive process, soliciting requests for proposals from a minimum of three qualified accounting firms.  Prior to engaging the new auditing firm, Gospel Light will identify the proposed auditing firm to the Attorney General, which the Attorney General may reject by providing notice of

rejection to Gospel Light no later than 30 days after receiving written notice of intent to proceed with hiring.  Gospel Light shall retain the new auditing firm no later than November 1, 2021 unless the Attorney General rejects the candidate.

C. For fiscal year 2020 and beyond, Gospel Light's IRS form 990 filings shall include the following:

  i. Gospel Light shall not be required to include cost-containment vendor expenses on Part IX of IRS form 990.  Within Part IX, however, Gospel Light shall reference or refer the reader to Schedule O of IRS form 990.

  ii. On Schedule O, Gospel Light shall disclose both total and net "sharepower" for the fiscal year.  The net sharepower figure shall be calculated by subtracting from the total sharepower figure all administrative expense allocations and all cost-containment vendor expenses.  The administrative expense allocations and cost containment vendor expenses shall be disclosed, separately, on Schedule O.  For the cost-containment vendor expenses, Gospel Light shall identify or describe the types of services (such as balance billing, provider disputes, case management, negotiations, preferred provider agreements, etc.) that are categorized as cost-containment vendor expenses.

D. For fiscal year 2020 and beyond, substantially the same information described in Paragraph 5.C.ii above shall also be disclosed in Gospel Light's audited financial statements.

6.  <u>Abel Retirement and Replacement Chief Executive Officer</u>.

A. Abel tendered her resignation to the Board of Directors of Gospel Light on January 24, 2021.  Abel's retirement date will be effective no later than January 24, 2022, and Abel

will abide by the terms set forth in the 2021 Executive Compensation and Severance/Retention Agreement. Upon her retirement and in no event later than January 24, 2022, Abel shall not be employed by Gospel Light in any capacity.

B. Prior to the Effective Date, Gospel Light will have executed the above identified 2021 Executive Compensation and Severance/Retention Agreement, which will require Abel to, among other services and covenants, use her best efforts to stabilize and position Gospel Light for a successful transition with a new senior officer. The senior officer will be selected by the Board of Directors of Gospel Light. The intent is for such person to take over as the next Chief Executive Officer after Abel's departure. The 2021 Executive Compensation and Severance/Retention package will provide compensation and benefits lasting not more than twelve months and otherwise reasonable and typical to one provided to senior management in the normal course of nonprofit employment agreements and departures. Prior to execution, Gospel Light will allow the Attorney General to review and verify the final terms of the 2021 Executive Compensation and Severance/Retention Agreement in the Columbus, Ohio office of Roetzel & Andress.

C. For a period of twelve months following the date of her effective separation of service from Gospel Light, Abel shall not perform any work or service, either directly or indirectly, for Gospel Light not authorized by the 2021 Executive Compensation and Severance/Retention Agreement or for any third-party vendor providing services to Gospel Light. Following this twelve-month period, Abel shall not be restricted from working for or on behalf of any third-party vendor providing services to Gospel Light. Provided, however, that if those services for the third-party vendor also involve

contractual services for Gospel Light, such services shall be subject to review and prior approval of Gospel Light's Board of Directors.

D. Within 180 days of the Effective Date, Gospel Light's Board of Directors shall direct a search for and hire a new senior officer to be trained by and take over as Chief Executive Officer for Abel upon her separation from Gospel Light. The new senior officer must be an outside and independent candidate. Prior to hiring, Gospel Light will identify the proposed senior officer for review of the independence and qualifications by the Attorney General, whom the Attorney General may reject by providing notice of rejection to Gospel Light no later than 15 business days after receiving written notice of intent to proceed with hiring.

E. Notwithstanding any other provision in this Agreement, Abel may work for or with any trade association whose members include but are otherwise independent of Gospel Light.

7.    <u>Bellis</u>.

A. Bellis shall not be employed by Gospel Light in any capacity following the December 31, 2022 termination date of his 2018 Executive Employment Agreement, as amended commensurate with this Agreement.

B. Effective December 31, 2022, all rights and obligations of Gospel Light and Bellis to one another under their 2018 Executive Employment Agreement shall fully and finally terminate such that, without limitation, Bellis' obligations not to compete with Gospel Light and any right to payment or benefits from Gospel Light shall cease, effective December 31, 2022.

C. Prior to December 31, 2022, Bellis shall not perform any work, either directly or indirectly, for Gospel Light not authorized by the 2018 Executive Employment Agreement, as amended commensurate with this Agreement, or for any third-party vendor providing services to Gospel Light.  Beginning on or after December 31, 2022, Bellis shall not be restricted from working for or on behalf of any third-party vendor providing services to Gospel Light, subject to review and prior approval of Gospel Light's Board of Directors.

D. Notwithstanding any other provision in this Agreement, Bellis may work for or with any trade association whose members include but are otherwise independent of Gospel Light.

8. <u>Foster</u>.

A. Foster is not currently and following the Effective Date shall not be employed by Gospel Light in any capacity.

B. Prior to the effective date of Abel's resignation from Gospel Light, Foster shall be barred from performing any work, either directly or indirectly, for Gospel Light.  He also shall not participate in any negotiation or delivery of direct services to Gospel Light on behalf of any third-party vendor providing services to Gospel Light. Beginning after the effective date of Abel's resignation from Gospel Light, Foster shall not be restricted from working for or on behalf of any third-party vendor providing services to Gospel Light, subject to review and prior approval of Gospel Light's Board of Directors.

C. Notwithstanding any other provision in this Agreement, Foster may work for or with any trade association whose members include but are otherwise independent of Gospel Light.

9. <u>Vendor Relationships</u>.

A. To the extent Gospel Light is party to any contract with The Medical Cost Savings Solution, Ltd., SavNet International, LLC, Cost Sharing Solutions, LLC, or any other vendor with common ownership to any of these entities, and that contract is set to expire on or before January 24, 2022, Gospel Light shall either let those contracts expire or agree only to extend the terms of the current contracts with minimal modifications until no later than March 31, 2022.

B. To the extent Gospel Light is party to any contract with The Medical Cost Savings Solution, Ltd., SavNet International, LLC, Cost Sharing Solutions, LLC, or any other vendor with common ownership to any of these entities, and that contract is set to expire after January 24, 2022, Gospel Light shall not negotiate an extension of such existing contract prior to March 31, 2022. The competitive vendor selection process established in Paragraph 9.C below does not prohibit the parties from negotiating and entering into a new contract after March 31, 2022.

C. Subsequent to March 31, 2022, Gospel Light shall not renew or enter into any contract with The Medical Cost Savings Solution, Ltd., SavNet International, LLC, Cost Sharing Solutions, LLC, or any other vendor with common ownership to any of these entities, without first utilizing a competitive and objective vendor-selection process approved by the Board of Directors of Gospel Light.

10.  <u>Continuation of Operations and Service at Gospel Light</u>.

    A.  This Agreement is intended to sustain and continue Gospel Light's operations and charitable service to the members of Liberty HealthShare throughout the changes otherwise described and required in this Agreement.

    B.  Other than the transfer referenced in Paragraph 1.M above, Gospel Light shall not merge with or into, transfer or assign any assets to, or transfer or assign any rights or obligations regarding the members of Liberty HealthShare to, or enter into any binding agreement to do any of the preceding with, any other organization or corporation, including any other health care sharing ministry, prior to March 31, 2022, and may do so thereafter only if approved by the Board of Directors of Gospel Light.

11.  <u>Civil Penalty, Costs and Fees</u>.

    A.  Subject to and without waiving Paragraphs 1.S and 1.U above, National Coalition agrees to pay a civil penalty for the failure to timely register with the Charitable Law Section of the Attorney General prior to making charitable solicitations, in the amount of $30,000.00 (thirty thousand dollars and zero cents) (the "<u>civil penalty</u>"), provided that $10,000.00 (ten thousand dollars and zero cents) of the civil penalty will be suspended subject to, and abated upon, National Coalition and Gospel Light fully satisfying and performing all of their obligations under the Agreement.  The civil penalty shall be paid by wire transfer with receipt acknowledged, or by cashier's check or money order payable to **"Treasurer, State of Ohio"** and mailed or delivered to:

        Ohio Attorney General
        Charitable Law Section
         Attn:  Chief Accountant
        30 E. Broad St., 25th Floor
        Columbus, OH  43215

The civil penalty shall be paid within 15 days of the Effective Date.  Gospel Light may pay, and guarantees the payment of, the civil penalty on behalf of National Coalition. Within two business days of receiving notice that National Coalition or Gospel Light intends to pay the civil penalty by wire transfer, the Attorney General shall provide to counsel wire transfer instructions.

B.  Subject to and without waiving Paragraphs 1.S and 1.U above, Gospel Light agrees to pay the Attorney General $20,000.00 (twenty thousand dollars and zero cents) for the reasonable costs of investigation and $50,000.00 (fifty thousand dollars and zero cents) for reasonable attorneys' fees incurred in conjunction with the Charitable Investigation (collectively, the "cost and fees amount").  The costs and fees amount shall be paid by wire transfer with receipt acknowledged, or by cashier's check or money order payable to "Treasurer, State of Ohio" and mailed or delivered to

   Ohio Attorney General
   Charitable Law Section
    Attn:  Chief Accountant
   30 E. Broad St., 25th Floor
   Columbus, OH  43215

The cost and fees amount shall be paid within 15 days of the Effective Date.  Within two business days of receiving notice that Gospel Light intends to pay the cost and fees amount by wire transfer, the Attorney General shall provide to counsel wire transfer instructions.

C.  Failure by National Coalition and/or Gospel Light to comply with their respective obligations under the Agreement shall entitle the Attorney General to $10,000.00 (ten thousand dollars and zero cents) in stipulated civil penalties per violation.  In the event the Attorney General believes that any obligation has not been complied with, the

Attorney General will provide written notice and a ten-day period to cure the noncompliance.  The notice required under this Paragraph may be provided to the party alleged to be in breach at the email address set forth in Paragraph 14.B below.  If the alleged breaching party is Gospel Light, such notice shall also be delivered by U.S. mail to the Chairman of the Board of Directors at the address set forth in Paragraph 1.D above.  The ten-day cure period begins once email or mail receipt is acknowledged by the alleged breaching party; provided, however, that if the Attorney General complies with the notice provisions in this Paragraph and Paragraph 14.B, then in no event shall the cure period exceed 24 days from the date notice was provided.

D.  National Coalition and Gospel Light do not control Abel, Bellis, and/or Foster, who are represented by separate counsel.  As such, to the extent Abel, Bellis, and/or Foster fails to adhere to the terms of this Agreement, National Coalition and Gospel Light shall not be held accountable for such conduct unless they directly participated in the conduct giving rise to the alleged breach.

E.  The Attorney General shall be entitled to an award of reasonable costs and fees, including attorneys' fees, incurred in successfully obtaining relief from any breach of the Agreement by any Liberty Party.

12.  Ongoing Cooperation by National Coalition, Gospel Light, Abel, Bellis, and Foster.

A.  The Liberty Parties shall cooperate, reasonably and promptly, with the Attorney General regarding the Charitable Investigation and any litigation arising from the Charitable Investigation.  This cooperation shall include:

i.  Fully, fairly, and truthfully disclosing and/or producing, voluntarily and without service of subpoena or investigative demand, all non-privileged information

and all non-privileged documents or other tangible evidence requested by the Attorney General concerning or relevant to whether any person is violating or conspiring to violate, or has violated or conspired to violate, the law including, without limitation, non-privileged information that falls into the following categories: (a) formation of National Coalition and/or Gospel Light; (b) operation of Gospel Light and/or National Coalition; (c) governance of Gospel Light and/or National Coalition; (d) finances of Gospel Light and/or National Coalition; (e) communications with past and present directors, trustees, officers, employees, consultants, contractors, and/or agents of Gospel Light and National Coalition; (f) business and/or contracts between and/or for the benefit of Gospel Light and/or National Coalition and service vendors, including without limitation Legacy Management, LLC, Cost Sharing Solutions LLC, The Medical Cost Savings Solution, Ltd., SavNet International LLC, and HealthShare RX (collectively, "Vendors"); (g) communications with past and present owners, members, managers, directors, trustees, officers, consultants, contractors, employees and/or agents of Vendors; (h) meetings, and actions without a meeting, of the directors and/or trustees of Gospel Light and/or National Coalition; (i) termination or separation of Gospel Light and/or National Coalition's Chief Legal Counsel Sandra Cheshire; (j) Termination or separation of Gospel Light and/or National Coalition's Chief Medical Officer John Hunt; (k) conflicts of interest, actual and/or alleged, relating to Gospel Light and/or National Coalition's formation, operation, governance, finances and/or service to members; and (l) Communications with and/or among

Druzilla Abel, Daniel J. Beers, Daniel J. Beers II, Ronald S. Beers, Thomas Fabris, Brandon Fabris, Dale Bellis, Larry Foster, and Douglas Behrens and persons acting as their agents or representatives.

ii.  For a period of not less than five years following the Effective Date, maintaining custody of, or making arrangements to have maintained, all documents and records that fall into the categories described in Paragraph 12.A.i including, for Abel, Bellis, and Foster, personal emails, text messages, or any other digital communications; and,

iii.  Attending, appearing and/or participating, voluntarily and without service of subpoena or investigative demand, at any discussions, interviews, depositions, hearings, trials or other proceedings, whether formal or informal, at which the presence of a Liberty Party is requested by the Attorney General and answering any and all inquiries regarding non-privileged information that may be put forth by the Attorney General at any proceedings, including about such Liberty Party's own acts and/or omissions and/or against such Liberty Party.   All Liberty Parties are entitled to reasonable notice of the request and may have counsel present to represent the them at these proceedings.

iv.  The cooperation required under Paragraph 12.A shall not be deemed to waive any attorney-client privilege or work product protections.   The Attorney General reserves the right to challenge any assertions of privilege or protection.

B.  Additional Cooperation by National Coalition and Gospel Light

i.  In addition to cooperation under Paragraph 12.A above, Gospel Light and National Coalition will undertake reasonable best efforts to have Gospel Light's

and/or National Coalition's current and former officers, directors and employees cooperate according to Paragraphs 12.A.i., 12.A.ii., and 12.A.iii above.

ii. No later than the Effective Date, Gospel Light and National Coalition shall produce to the Attorney General a log or logs of the documents and information withheld and/or redacted from their responses to investigative requests for records in the Charitable Investigation.  The log(s) shall provide sufficient information, without disclosing privileged information, to identify and ascertain the parties to, dates, parties to creation and/or communication, form and subject matter of such documents and information, and the asserted privilege or protection.

iii. No later than 14 days after the Effective Date, Gospel Light and/or the National Coalition will release Jim Hummer from any and all non-disclosure agreements for the limited purpose of allowing him to fully cooperate with the Attorney General regarding the Charitable Investigation and any litigation arising from the Charitable Investigation.

iv. No later than 14 days after the Effective Date, Gospel Light and/or National Coalition will release Sandy Cheshire from any and all non-disclosure agreements for the limited purpose of allowing her to fully cooperate with the Attorney General regarding the Charitable Investigation and any litigation arising from the Charitable Investigation, provided that such release(s) shall not waive any attorney-client privilege or work product protections.  The Attorney General does not object if counsel from Roetzel & Andress or other designated

counsel (at the discretion and cost of Gospel Light and/or National Coalition) is present in any interview, deposition, or testimony of Ms. Cheshire to assert reasonable objections to preserve the attorney-client privilege or attorney work product protection.  The Attorney General reserves the right to challenge any assertions of privilege or protection.

C.  The parties reserve all rights under the Ohio Civil Rules and any rights afforded by the 5th Amendment to the U.S. Constitution with respect to their obligations to cooperate under this Agreement.

D.  A refusal to cooperate by any Liberty Party will be considered only a breach of the Agreement by the refusing Liberty Party, subject to the rights reserved in Paragraphs 11.D, 12.B.i., and 12.C above.

13.  <u>Releases and Reservation of Rights</u>.

A.  Conditioned upon and subject to full and complete material performance of their obligations under this Agreement, the Attorney General hereby fully and completely releases Abel, Bellis, and Foster from any and all claims, and causes of action of any nature or any kind, both known and unknown, arising from the Charitable Investigation for any acts and/or omissions in their capacity as Board Members and/or Officers of Gospel Light or the National Coalition.

B.  Conditioned upon and subject to full and complete material performance of their obligations under this Agreement, the Attorney General hereby fully and completely releases Gospel Light and National Coalition from any and all claims, and causes of action of any nature or kind, both known and unknown, arising from the Charitable Investigation.

C.  Conditioned upon and subject to full and complete material performance by Gospel Light and National Coalition of their obligations under this Agreement, the Attorney General hereby fully and completely releases Darrell Beachy, Durlin Beachy, Don Brewer, Scot Burris, Joseph Gingerich, Brad Hahn, Tyler Hochstetler, Ryan Mast, William Waldron, Everett Yoder, Stephen Furst, Steve Yashnik, Michael Fairless, Robert Kintigh, Amy Hagen, Sr., Terrie Ipson, and Wes Humble (collectively, the "Released Nonparties") from any and all claims, causes of action of any nature or kind, both known and unknown, arising from the Charitable Investigation for any acts and/or omissions in their capacities as Board Members and/or Officers of Gospel Light or National Coalition.

   i.  Upon a showing by Gospel Light that it must indemnify any other individual(s) relating to or arising from the Charitable Investigation, the Attorney General will work in good faith with Gospel Light to determine whether such individual may be released on the same or similar terms and conditions as individuals are being released under this Agreement.

   ii.  Nothing in this Agreement shall be construed to prevent or limit in any way the Attorney General's ability to seek information, documents, or testimony from any of the Released Nonparties.

D.  Nothing in this Agreement shall be construed to release any of the Liberty Parties from their obligations under this Agreement.  Nothing in this Agreement shall be construed to release any of the Liberty Parties or any of the Released Nonparties from any claims or causes of action based on acts or omissions occurring after the Effective Date.

E.  Nothing in this Agreement shall be construed to release or effect in any way, and the Attorney General reserves all rights to pursue, any and all claims or causes of action the Attorney General may have against any individual or entity other than the Liberty Parties or the Released Nonparties, including claims or causes of action that may involve the acts or omissions of the Liberty Parties or the Released Nonparties.

F.  Nothing in this Agreement shall be construed to release or effect in any way, and the Attorney General reserves all rights to pursue, any and all claims or causes of action of any State agencies or sections of the Attorney General's Office other than the Charitable Law Section, including any claims or causes of action arising out of or relating to any investigation by the Consumer Protection Section of the Ohio Attorney General's Office.

14.  <u>Miscellaneous</u>.

A.  The parties shall execute and deliver such further instruments and documents and take such other actions as may reasonably be requested and required to perform their obligations under this Agreement, including obligations to cooperate.

B.  Any notice required or provided under this Agreement shall be effective when sent by as follows:

i.  To Gospel Light c/o Daniel Hilson, Esq., Roetzel & Andress, at dhilson@ralaw.com, and Jessica Lopez, Esq., Roetzel & Andress at Jlopez@ralaw.com, and with a mail address of 222 S. Main Street, Akron, Ohio 44308-1500, with a copy via regular U.S. Mail to Gospel Light Mennonite Church Medical Aid Plan, 4845 Fulton Drive NW, Canton, Ohio 44718 Attention: Chief Legal Officer;

ii.  To National Coalition c/o Daniel Hilson, Esq., Roetzel & Andress, at dhilson@ralaw.com, and Jessica Lopez, Esq., Roetzel & Andress at Jlopez@ralaw.com, and with a mail address of 222 S. Main Street, Akron, Ohio 44308-1500, with a copy via regular U.S. Mail to National Coalition of Health Care Sharing Ministries, Inc., 4845 Fulton Drive NW, Canton, Ohio 44718 Attention: Chief Legal Counsel;

iii.  To Abel c/o Helen Mac Murray, Esq., Mac Murray & Shuster, at hmacmurray@mslawgroup.com and with a mail address of 6525 West Campus Oval Ste. 210, New Albany, Ohio 43054 with a copy to Druzilla Abel via email to drudyable@yahoo.com;

iv.  To Bellis c/o David Thomas, Esq., Taft, Stettinius & Hollister LLP, at dthomas@taftlaw.com, and with a mail address of 65 East State Street Ste. 1000, Columbus, Ohio 43215, with a copy to Dale Bellis via email to dalebellis123@gmail.com;

v.  To Foster c/o Helen Mac Murray, Esq., Mac Murray & Shuster, at hmacmurray@mslawgroup.com, and with a mail address of 6525 West Campus Oval Ste 210 New Albany, Ohio 43054, with a copy to Larry Foster via email to lfoster@pharmacywholesaleclub.com; and

vi.  To the Attorney General, c/o Daniel Fausey, Section Chief, Charitable Law Section at Daniel.Fausey@OhioAttorneyGeneral.gov, with a copy to Attorney General, Charitable Law Section, 30 E. Broad St., 25th Floor, Columbus, Ohio 43215, Attention:  Section Chief.

Any party may change its notice party and/or address by providing written notice to the Attorney General and all Liberty Parties according to this Agreement.

C. This Agreement is entered into in the State of Ohio and will be governed under the laws of the State of Ohio.

D. The parties acknowledge and agree that all matters relating to the enforcement and interpretation of this Agreement shall be subject to the jurisdiction of the Franklin County, Ohio Common Pleas Court.

E. All parties acknowledge that they have been given ample opportunity to be advised by legal counsel of their own choosing as to the meaning and effect of each provision of this Agreement and that they have knowingly and voluntarily elected to enter into this Agreement.  The parties agree to sign this Agreement as their own voluntary act and deed, and each represents that such execution was not the result of any duress, coercion, or undue influence upon either of them.  The parties hereby acknowledge receipt of a copy of this Agreement before signing it and understand that each and every provision of this Agreement is contractual, legally binding, and not mere recitals.

F. In the event that any provision of the Agreement is deemed to be invalid or unenforceable, the remaining provisions will remain intact and enforceable as stated, provided that doing so provides the same or similar consideration to the parties.

G. This Agreement represents the entire understanding of the parties with respect to the subject matter contained herein.  The Agreement may be modified only in writing signed by all parties.

H.  This Agreement is not intended to and shall not confer any rights upon any persons or entities other than the Attorney General, the Liberty Parties, and the Released Nonparties.

I.  This Agreement may be signed in counterparts which, when taken together, will constitute a single integrated document.  Signed copies of the Agreement sent by electronic means will be considered to be the same as original signed versions.

J.  It is understood and agreed that the payments described herein and the settlement and releases are the compromise of disputed claims and are not to be construed as an admission of any liability, fault, or wrongdoing on the part of the Liberty Parties, whom expressly deny liability and fault.

K.  Each party has cooperated in (and in any construction to be made of this Agreement shall be deemed to have cooperated in) the drafting and the preparation of this Agreement.

L.  Each individual signing below represents that he or she is authorized and directed to sign this Agreement on behalf of the representative party and further represents that he or she has the requisite authority to bind the party on behalf of whom they are signing.


**(remainder of this page intentionally left blank / signature page follows)**

SETTLEMENT AGREEMENT– Page **24** of **24**

This Agreement is being executed by the parties as of the Effective Date.

DALE BELLIS, in his personal capacity

NATIONAL COALITION OF HEALTH
CARE SHARING MINISTRIES, INC.

*Durlin Beachy*

_____
Signature

_____
Representative's Signature

Durlin Beachy-Chairman
_____
Printed name and title

DRUZILLA ABEL, in her personal capacity

_____
Signature

GOSPEL LIGHT MENNONITE CHURCH
MEDICAL AID PLAN, INC.

_____
Representative's Signature

LARRY FOSTER, in his personal capacity

_____
Printed name and title

_____
Signature

DAVE YOST,
OHIO ATTORNEY GENERAL

_____
Daniel W. Fausey
Section Chief
Charitable Law Section
30 E. Broad St., 25th Fl.
Columbus, OH 43215

This Agreement is being executed by the parties as of the Effective Date.

DALE BELLIS, in his personal capacity

NATIONAL COALITION OF HEALTH CARE SHARING MINISTRIES, INC.

_____
Signature

_____
Representative's Signature

_____
Printed name and title

DRUZILLA ABEL, in her personal capacity

_____
Signature

GOSPEL LIGHT MENNONITE CHURCH MEDICAL AID PLAN, INC.

_____
Representative's Signature

LARRY FOSTER, in his personal capacity

_____
Printed name and title

_____
Signature

DAVE YOST,
OHIO ATTORNEY GENERAL

_____
Daniel W. Fausey
Section Chief
Charitable Law Section
30 E. Broad St., 25th Fl.
Columbus, OH 43215

This Agreement is being executed by the parties as of the Effective Date.

DALE BELLIS, in his personal capacity

NATIONAL COALITION OF HEALTH CARE SHARING MINISTRIES, INC.

_____
Signature

_____
Representative's Signature

_____
Printed name and title

DRUZILLA ABEL, in her personal capacity

GOSPEL LIGHT MENNONITE CHURCH MEDICAL AID PLAN, INC.

_____
Signature

_____
Representative's Signature

_____
Printed name and title

LARRY FOSTER, in his personal capacity

_____
Signature

DAVE YOST,
OHIO ATTORNEY GENERAL

_____
Daniel W. Fausey
Section Chief
Charitable Law Section
30 E. Broad St., 25th Fl.
Columbus, OH 43215

This Agreement is being executed by the parties as of the Effective Date.

DALE BELLIS, in his personal capacity

_____
Signature

DRUZILLA ABEL, in her personal capacity

_____
Signature

LARRY FOSTER, in his personal capacity

_____
Signature

NATIONAL COALITION OF HEALTH
CARE SHARING MINISTRIES, INC.

_____
Representative's Signature

_____
Printed name and title

GOSPEL LIGHT MENNONITE CHURCH
MEDICAL AID PLAN, INC.

_____
Representative's Signature

_____
Printed name and title

DAVE YOST,
OHIO ATTORNEY GENERAL

_____
Daniel W. Fausey
Section Chief
Charitable Law Section
30 E. Broad St., 25th Fl.
Columbus, OH 43215

SETTLEMENT AGREEMENT– Page **24** of **24**

This Agreement is being executed by the parties as of the Effective Date.

DALE BELLIS, in his personal capacity

_____
Signature

DRUZILLA ABEL, in her personal capacity

_Druzilla Abel_____
Signature

LARRY FOSTER, in his personal capacity

_____
Signature

NATIONAL COALITION OF HEALTH
CARE SHARING MINISTRIES, INC.

_____
Representative's Signature

_____
Printed name and title

GOSPEL LIGHT MENNONITE CHURCH
MEDICAL AID PLAN, INC.

_____
Representative's Signature

_____
Printed name and title

DAVE YOST,
OHIO ATTORNEY GENERAL

_____
Daniel W. Fausey
Section Chief
Charitable Law Section
30 E. Broad St., 25th Fl.
Columbus, OH 43215

This Agreement is being executed by the parties as of the Effective Date.

DALE BELLIS, in his personal capacity

NATIONAL COALITION OF HEALTH
CARE SHARING MINISTRIES, INC.

_____
Signature

_____
Representative's Signature

_____
Printed name and title

DRUZILLA ABEL, in her personal capacity

_____
Signature

GOSPEL LIGHT MENNONITE CHURCH
MEDICAL AID PLAN, INC.

_____
Representative's Signature

LARRY FOSTER, in his personal capacity

_____
Printed name and title

_____
Signature

DAVE YOST,
OHIO ATTORNEY GENERAL

_____
Daniel W. Fausey
Section Chief
Charitable Law Section
30 E. Broad St., 25th Fl.
Columbus, OH 43215