# EXHIBIT F

This Settlement Agreement ("Agreement") is entered into between the United States acting through the United States Department of Justice ("Department of Justice"), along with the States of California, Delaware, Illinois, and New York and the Commonwealth of Massachusetts, acting through their respective Attorneys General (collectively, "the States"), and Citigroup Inc. ("Citigroup").  The United States, the States, and Citigroup are collectively referred to herein as "the Parties."

## RECITALS

A.     The Department of Justice conducted investigations of the packaging, marketing, sale, structuring, arrangement, and issuance of residential mortgage-backed securities ("RMBS") and collateralized debt obligations ("CDOs") by Citigroup between 2006 and 2007.  Based on those investigations, the United States believes that there is an evidentiary basis to compromise potential legal claims by the United States against Citigroup for violations of federal laws in connection with the packaging, marketing, sale, structuring, arrangement, and issuance of RMBS and CDOs.

B.     The States, based on their independent investigations of the same conduct, believe that there is an evidentiary basis to compromise potential legal claims by California, Delaware, Illinois, Massachusetts, and New York against Citigroup for state law violations in connection with the packaging, marketing, sale, structuring, arrangement, and issuance of RMBS and CDOs.

C.     Citigroup has resolved claims filed by the Federal Deposit Insurance Corporation as Receiver for Strategic Capital Bank, and the Federal Deposit Insurance Corporation as Receiver for Colonial Bank (collectively, "FDIC"), alleging violations of federal and state securities laws in connection with private-label RMBS issued, underwritten, and/or sold by

Citigroup.  The terms of the resolution of those claims are memorialized in a separate agreement, attached as Exhibit A.

D.      Citigroup acknowledges the facts set out in the Statement of Facts set forth in Annex 1, attached and hereby incorporated.

E.      In consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

## **TERMS AND CONDITIONS**

1.      **Payment.**  Citigroup shall pay a total amount of $4,500,000,000.00 to resolve pending and potential legal claims in connection with the packaging, marketing, sale, structuring, arrangement, and issuance of RMBS and CDOs by Citigroup ("Settlement Amount").  As set out below, $4,000,000,000.00 of that amount will be deposited in the United States Treasury and the remainder is paid to resolve the claims of the States and the FDIC, pursuant to the subsequent provisions of this Paragraph 1.

A.      Within fifteen business days of receiving written payment processing instructions from the Department of Justice, Office of the Associate Attorney General, Citigroup shall pay $4,208,250,000.00 of the Settlement Amount by electronic funds transfer to the Department of Justice.

i. $4,000,000,000.00 of the Settlement Amount, and no other amount, is a civil monetary penalty recovered pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1833a.  It will be deposited in the General Fund of the United States Treasury.

ii. $208,250,000.00 and no other amount, is paid by Citigroup in settlement of the claims of the FDIC identified in Recital Paragraph C, pursuant to the settlement

agreement attached hereto as Exhibit A, the terms of which are not altered or affected by this Agreement.

B.      $102,700,000.00, and no other amount, will be paid by Citigroup to the State of California pursuant to Paragraph 6, below, and the terms of written payment instructions from the State of California, Office of the Attorney General.  Payment shall be made by electronic funds transfer within fifteen business days of receiving written payment processing instructions from the State of California, Office of the Attorney General.

C.      $7,350,000.00, and no other amount, will be paid by Citigroup to the State of Delaware pursuant to Paragraph 7, below, and the terms of written payment instructions from the State of Delaware, Office of the Attorney General.  Payment shall be made by electronic funds transfer within fifteen business days of receiving written payment processing instructions from the State of Delaware, Office of the Attorney General.

D.      $44,000,000.00, and no other amount, will be paid by Citigroup to the State of Illinois pursuant to Paragraph 8, below, and the terms of written payment instructions from the State of Illinois, Office of the Attorney General.  Payment shall be made by electronic funds transfer within fifteen business days of receiving written payment processing instructions from the State of Illinois, Office of the Attorney General.

E.      $45,700,000.00, and no other amount, will be paid by Citigroup to the Commonwealth of Massachusetts pursuant to Paragraph 9, below, and the terms of written payment instructions from the Commonwealth of Massachusetts, Office of the Attorney General. Payment shall be made by electronic funds transfer within fifteen business days of receiving written payment processing instructions from the Commonwealth of Massachusetts, Office of the Attorney General.

F.      $92,000,000.00, and no other amount, will be paid by Citigroup to the State of New York pursuant to Paragraph 10, below, and the terms of written payment instructions from the State of New York, Office of the Attorney General.  Payment shall be made by electronic funds transfer within fifteen business days of receiving written payment processing instructions from the State of New York, Office of the Attorney General.

2.      **Consumer Relief.**  In addition, Citigroup shall provide $2.5 billion worth of consumer relief as set forth in Annex 2, attached and hereby incorporated as a term of this Agreement.  The value of consumer relief provided shall be calculated and enforced pursuant to the terms of Annex 2.  An independent monitor will be appointed to determine whether Citigroup has satisfied the obligations contained in this Paragraph (such monitor to be Thomas J. Perrelli), and any costs associated with said Monitor shall be borne by Citigroup.

3.      **Covered Conduct.**  "Covered Conduct" as used herein is defined as the creation, pooling, structuring, arranging, formation, packaging, marketing, underwriting, sale, or issuance prior to January 1, 2009 by Citigroup of the RMBS and CDOs identified in Annex 3, attached and hereby incorporated.  Covered Conduct includes representations, disclosures, or non-disclosures to RMBS investors made in connection with the activities set forth above about the underlying residential mortgage loans, where the representation or non-disclosure involves information about or obtained during the process of originating, acquiring, securitizing, underwriting, or servicing residential mortgage loans included in the RMBS identified in Annex 3.  Covered Conduct also includes representations, disclosures, or non-disclosures made in connection with the activities set forth above about the CDOs identified in Annex 3, attached and hereby incorporated.  Covered Conduct does not include:  (i) conduct relating to the origination of residential mortgages, except representations or non-disclosures to investors in the

RMBS listed in Annex 3 about origination of, or about information obtained in the course of originating, such loans; (ii) origination conduct unrelated to securitization, such as soliciting, aiding or abetting borrower fraud; (iii) the servicing of residential mortgage loans, except representations or non-disclosures to investors in the RMBS listed in Annex 3 about servicing, or information obtained in the course of servicing, such loans; or (iv) representations or non-disclosures made in connection with the trading of RMBS, except to the extent that the representations or non-disclosures are in the offering materials for the underlying RMBS listed in Annex 3.

4. **Cooperation.**  Until the date upon which all investigations and any prosecution arising out of the Covered Conduct are concluded by the Department of Justice, whether or not they are concluded within the term of this Agreement, Citigroup shall, subject to applicable laws or regulations:  (a) cooperate fully with the Department of Justice (including the Federal Bureau of Investigation) and any other law enforcement agency designated by the Department of Justice regarding matters arising out of the Covered Conduct; (b) assist the Department of Justice in any investigation or prosecution arising out of the Covered Conduct by providing logistical and technical support for any meeting, interview, grand jury proceeding, or any trial or other court proceeding; (c) use its best efforts to secure the attendance and truthful statements or testimony of any officer, director, agent, or employee of any of the entities released in Paragraph 5 at any meeting or interview or before the grand jury or at any trial or other court proceeding regarding matters arising out of the Covered Conduct; and (d) provide the Department of Justice, upon request, all non-privileged information, documents, records, or other tangible evidence regarding matters arising out of the Covered Conduct about which the Department or any designated law enforcement agency inquires.

5.      **Releases by the United States.**  Subject to the exceptions in Paragraph 12 ("Excluded Claims"), and conditioned upon Citigroup's full payment of the Settlement Amount (of which $4 billion will be paid as a civil monetary penalty pursuant to FIRREA, 12 U.S.C. § 1833a), and Citigroup's agreement, by executing this Agreement, to satisfy the terms in Paragraph 2 ("Consumer Relief") and Paragraph 4 ("Cooperation"), the United States fully and finally releases Citigroup and each of its current and former subsidiaries and affiliated entities (collectively, the "Released Entities"), and each of their respective successors and assigns from any civil claim the United States has against the Released Entities for the Covered Conduct arising under FIRREA, 12 U.S.C. § l833a; the False Claims Act, 31 U.S.C. §§ 3729, *et seq.*; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801, *et seq.*; the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.*; the Injunctions Against Fraud Act, 18 U.S.C. § 1345; common law theories of negligence, payment by mistake, unjust enrichment, money had and received, breach of fiduciary duty, breach of contract, misrepresentation, deceit, fraud, and aiding and abetting any of the foregoing; or that the Civil Division of the Department of Justice has actual and present authority to assert and compromise pursuant to 28 C.F.R. § 0.45.

6.      **Releases by the California Attorney General.**  Subject to the exceptions in Paragraph 12 (Excluded Claims), and conditioned solely upon Citigroup's full payment of the Settlement Amount (of which $102,700,000.00 will be paid to the Office of the California Attorney General, in accordance with written payment instructions from the California Attorney General, to remediate harms to the State, pursuant to California Government Code §§ 12650-12656 and 12658, allegedly resulting from unlawful conduct of the Released Entities), the California Attorney General fully and finally releases the Released Entities from any civil or

administrative claim for the Covered Conduct that the California Attorney General has authority to bring, including but not limited to:  California Corporate Securities Law of 1968, Cal. Corporations Code § 25000 *et seq.*, California Government Code §§ 12658 and 12660 and California Government Code §§ 12650-12656, common law theories of negligence, payment by mistake, unjust enrichment, money had and received, breach of fiduciary duty, breach of contract, misrepresentation, deceit, fraud and aiding and abetting any of the foregoing.  The California Attorney General executes this release in her official capacity and releases only claims that the California Attorney General has the authority to release for the Covered Conduct.  The California Attorney General agrees that no portion of the funds in this paragraph is received as a civil penalty or fine, including, but not limited to any civil penalty or fine imposed under California Government Code § 12651.  The California Attorney General and Citigroup acknowledge that they have been advised by their attorneys of the contents and effect of Section 1542 of the California Civil Code ("Section 1542") and hereby expressly waive with respect to this Agreement any and all provisions, rights, and benefits conferred by Section 1542.

7.      **Releases by the State of Delaware.**  Subject to the exceptions in Paragraph 12 (Excluded Claims), and conditioned solely upon Citigroup's full payment of the Settlement Amount (of which $7,350,000.00 will be paid to the State of Delaware, in accordance with written payment instructions from the State of Delaware, Office of the Attorney General, to remediate harms to the State allegedly resulting from unlawful conduct of the Released Entities), the Delaware Department of Justice fully and finally releases the Released Entities from any civil or administrative claim for the Covered Conduct that it has authority to bring, including but not limited to:  6 Del. C. Chapter 12 (the Delaware False Claims and Reporting Act), 6 Del. C. §§ 2511 *et seq.* (the Delaware Consumer Fraud Act), 6 Del. C. Chapter 73 (the Delaware

Securities Act), and common law theories of negligence, payment by mistake, unjust enrichment, money had and received, breach of fiduciary duty, breach of contract, misrepresentation, deceit, fraud and aiding and abetting any of the foregoing.  The State of Delaware agrees that no portion of the funds in this paragraph is received as a civil penalty or fine, including, but not limited to any civil penalty or fine imposed under 6 Del. C. § 1201 or § 2522.

8.      **Releases by the State of Illinois.**  Subject to the exceptions in Paragraph 12 (Excluded Claims), and conditioned solely upon Citigroup's full payment of the Settlement Amount (of which $44,000,000.00 will be paid to the State of Illinois, Office of the Attorney General, in accordance with the written payment instructions from the State of Illinois, Office of the Attorney General, to remediate harms to the State  allegedly resulting from unlawful conduct of the Released Entities), the Illinois Attorney General of the State of Illinois fully and finally releases the Released Entities from any civil or administrative claim for the Covered Conduct that it has authority to bring, including but not limited to:  Illinois Securities Law of 1953, 815 Ill. Comp. Stat. 5/1 *et seq.*, and common law theories of negligence, payment by mistake, unjust enrichment, money had and received, breach of fiduciary duty, breach of contract, misrepresentation, deceit, fraud and aiding and abetting any of the foregoing.  The State of Illinois agrees that no portion of the funds in this paragraph is received as a civil penalty or fine.

9.      **Releases of the Commonwealth of Massachusetts.**  Subject to the exceptions in Paragraph 12 (Excluded Claims), and conditioned solely upon Citigroup's full payment of the Settlement Amount (of which $45,700,000.00 will be paid to the Commonwealth of Massachusetts, in accordance with the written payment instructions from the Commonwealth of Massachusetts, to remediate harms to the Commonwealth allegedly resulting from unlawful conduct of the Released Entities), the Attorney General of the Commonwealth of Massachusetts

fully and finally releases the Released Entities from any civil claim for the Covered Conduct that she has authority to bring, including but not limited to:  M.G.L. c. 93A, M.G.L. c. 12, and common law theories of negligence, payment by mistake, unjust enrichment, money had and received, breach of fiduciary duty, breach of contract, misrepresentation, deceit, fraud and aiding and abetting any of the foregoing.  The payment to the Commonwealth of Massachusetts shall be made to a trustee chosen by the Commonwealth, which shall hold the monies and distribute them as directed by the Massachusetts Office of the Attorney General for consumer relief, compensation to the Commonwealth and its entities, and pursuant to M.G.L. c. 12 § 4A, implementation of this Agreement and related purposes.  Funds or portions of the funds remaining in the trust after 90 days, at the discretion of the Massachusetts Office of the Attorney General, may be transferred to the Massachusetts Treasury.  The Commonwealth of Massachusetts agrees that no portion of the funds in this paragraph is received as a civil penalty or fine.

10.    **Releases by the State of New York.**  Subject to the exceptions in Paragraph 12 (Excluded Claims), and conditioned solely upon Citigroup's full payment of the Settlement Amount (of which $92,000,000.00 will be paid to the State of New York, in accordance with written payment instructions from the State of New York, Office of the Attorney General, to remediate harms to the State allegedly resulting from unlawful conduct of the Released Entities), the State of New York, by Eric T. Schneiderman, Attorney General of the State of New York, fully and finally releases the Released Entities from any civil or administrative claim for the Covered Conduct that it has authority to bring, including but not limited to any such claim under:  New York General Business Law Article 23A, New York Executive Law § 63(12), and common law theories of negligence, payment by mistake, unjust enrichment, money had and

received, breach of fiduciary duty, breach of contract, misrepresentation, deceit, fraud and aiding

and abetting any of the foregoing.  The payment to the State of New York shall be used, to the

maximum extent possible, for purposes of redeveloping and revitalizing housing and home

ownership and rebuilding communities in the State, and for programs intended to avoid

preventable foreclosures, to ameliorate the effects of the foreclosure crisis, to provide funding for

housing counselors and legal assistance, housing remediation and anti-blight projects, for code

enforcement, and to enhance law enforcement efforts involving financial fraud or unfair or

deceptive acts or practices.  The State of New York agrees that no portion of the funds in this

paragraph is received as a civil penalty or fine.

11.     **Releases by the FDIC.**  The release of claims by the FDIC is contained in a separate

settlement agreement with Citi, attached as Exhibit A.  Any release of claims by the FDIC is

governed solely by that separate settlement agreement.

12.     **Excluded Claims.**  Notwithstanding the releases in Paragraphs 5-11 of this Agreement,

or any other term(s) of this Agreement, the following claims are specifically reserved and not

released by this Agreement:

> a.   Any criminal liability;
>
> b.   Any liability of any individual;
>
> c.   Any liability arising under Title 26 of the United States Code (the Internal
>      Revenue Code);
>
> d.   Any liability to or claims of the FDIC (in its capacity as a corporation, receiver, or
>      conservator), except as expressly set forth in the separate agreement with the
>      FDIC;

e.  Any claim related to compliance with the National Mortgage Settlement ("NMS"), or to compliance with the related agreements reached between the settling banks and individual states;

f.  Any liability to or claims of the United States of America, the Department of Housing and Urban Development/Federal Housing Administration, the Department of Veterans Affairs, or Fannie Mae or Freddie Mac relating to whole loans insured, guaranteed, or purchased by the Department of Housing and Urban Development/Federal Housing Administration, the Department of Veterans Affairs, or Fannie Mae or Freddie Mac, except claims based on or arising from the securitizations of any such loans in the RMBS or CDOs listed in Annex 1.

g.  Any administrative liability, including the suspension and debarment rights of any federal  agency;

h.  Any liability based upon obligations created by this Settlement Agreement;

i.  Any liability for the claims or conduct alleged in the following *qui tam* actions, and no setoff related to amounts paid under this Agreement shall be applied to any recovery in connection with any of these actions:

(i)  *United States, et al. ex rel. Szymoniak v. American Home Mortgage Servicing, Inc. et al.,* No. 0:10-cv-01465-JFA (D.S.C.), *and United States ex rel. Szymoniak v. ACE Securities  Corp. et al.,* No. 13-cv-464-JFA (D.S.C.); and

(ii)  *United States ex rel. [Sealed] v. [Sealed]*, as disclosed to Citigroup;

j.  Claims raised in *Commonwealth of Massachusetts v. Bank of America, N.A., et al.*, Civ. No. 11-4363 (BLS1)(Massachusetts Suffolk Superior Court); and

11

      k.   Any claims related to the alleged manipulation of the London Interbank Offered Rate or other currency benchmarks.

13.    **Releases by Citigroup.**  Citigroup and any current or former affiliated entity and any of their respective successors and assigns fully and finally release the United States and the States, and their officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Citigroup has asserted, could have asserted, or may assert in the future against the United States and the States, and their officers, agents, employees, and servants, related to the Covered Conduct and the investigation and civil prosecution to date thereof.

14.    **Waiver of Potential FDIC Indemnification Claims by Citi.**  Citigroup hereby irrevocably waives any right that it otherwise might have to seek (and in any event agrees that it shall not seek) any form of indemnification, reimbursement or contribution from the FDIC in any capacity, including the FDIC in its Corporate Capacity or the FDIC in its Receiver Capacity for any payment that is a portion of the Settlement Amount set forth in Paragraph 1 of this Agreement or of the Consumer Relief set forth in Paragraph 2 of this Agreement, including payments to the United States and the States made pursuant to Paragraphs 1 and 2 of this Agreement.

15.    **Waiver of Potential Defenses by Citigroup.**  Citigroup and any current or former affiliated entity (to the extent that Citigroup retains liability for the Covered Conduct associated with such affiliated entity) and any of their respective successors and assigns waive and shall not assert any defenses Citigroup may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under

12

the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive

Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought

in such criminal prosecution or administrative action.

16.     **Unallowable Costs Defined.**  All costs (as defined in the Federal Acquisition Regulation,

48 C.F.R. § 31.205-47) incurred by or on behalf of Citigroup, and its present or former officers,

directors, employees, shareholders, and agents in connection with:

      a.  the matters covered by this Agreement;

      b.  the United States' audit(s) and civil investigation(s) of the matters covered by this
         Agreement;

      c.  Citigroup's  investigation, defense, and corrective actions undertaken in response
         to the United States' audit(s) and civil and any criminal investigation(s) in
         connection with the matters covered by this Agreement (including attorney's
         fees);

      d.  the negotiation and performance of this Agreement; and

      e.  the payment Citigroup makes to the United States pursuant to this Agreement, are
         unallowable costs for government contracting purposes (hereinafter referred to as
         "Unallowable Costs").

17.     **Future Treatment of Unallowable Costs.**  Unallowable Costs will be separately

determined and accounted for by Citigroup, and Citigroup shall not charge such Unallowable

Costs directly or indirectly to any contract with the United States.

18.     This Agreement is governed by the laws of the United States.  The Parties agree that the

exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States

District Court for the Eastern District of New York.

19.     The Parties acknowledge that this Agreement is made without any trial or adjudication or finding of any issue of fact or law, and is not a final order of any court or governmental authority.

20.     Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

21.     Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

22.     Nothing in this Agreement in any way alters the terms of the NMS, or Citigroup's obligations under the NMS.

23.     Nothing in this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for the purposes of the Internal Revenue laws, Title 26 of the United States Code.

24.     For the purposes of construing the Agreement, this Agreement shall be deemed to have been drafted by all Parties and shall not, therefore, be construed against any Party for that reason in any dispute.

25.     This Agreement constitutes the complete agreement between the Parties.  This Agreement may not be amended except by written consent of the Parties.

26.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

27.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

28.     This Agreement is binding on Citigroup's successors, transferees, heirs, and assigns.

29.     All parties consent to the disclosure to the public of this Agreement, and information about this Agreement, by Citigroup, the United States, the States, and the FDIC whose separate settlement agreement is referenced herein and attached as an exhibit to this Agreement.

30.     This Agreement is effective on the date of signature of the last signatory to the Agreement ("Effective Date of this Agreement").  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

For the United States:


TONY WEST
Associate Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C.  20530
Phone:  (202) 514-9500


Dated:  July 11, 2014

For Citigroup Inc.:


Rohan Weerasinghe
General Counsel
Citigroup Inc.
399 Park Avenue
New York, New York 10022
Phone: (212) 793-1300


Brad S. Karp
Theodore V. Wells, Jr.
Bruce Birenboim
Susanna M. Buergel
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Phone: (212) 373-3000
Facsimile: (212) 492-0316

Dated:  July 11, 2014

For the California Department of Justice:

KAMALA D. HARRIS
California Attorney General
California Department of Justice
455 Golden Gate, Suite 1000
San Francisco, CA 94102
Phone: (415) 703-5500

Dated: 7/11/14

For the State of Delaware:


_____
JOSEPH R. BIDEN, III
Attorney General for the State of Delaware
Delaware Department of Justice
Carvel State Office Building
820 N. French Street
Wilmington, DE  19801
Phone:  (302) 577-8338

Dated: ___7/11/14_____

For the State of Illinois:


LISA MADIGAN
Attorney General State of Illinois
500 South Second Street
Springfield, IL  62706
Phone:  (217) 782-1090

Dated: _July 14, 2014_

For the Commonwealth of Massachusetts:

Office of the Attorney General
Attorney General Martha Coakley
By:

GLENN KAPLAN
Assistant Attorney General
One Ashburton Place
Boston, MA  02108
Phone:  (617) 727-2200

Dated:  7/11/14

For the State of New York:

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
120 Broadway
New York, NY  10271
Phone:  (212) 416-8000

Dated: 7/11/14