**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ROCHELLE GLASGOW, *et al*., | CASE NO.   5:21-CV-02001-DAR |
| Plaintiffs, | |
| vs. | JUDGE DAVID A. RUIZ |
| DANIEL J. BEERS, *et al*., | |
| Defendants. | |

**DEFENDANT GOSPEL LIGHT MENNONITE CHURCH MEDICAL AID PLAN INC.
D/B/A LIBERTY HEALTHSHARE'S MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………………... iii

I.  INTRODUCTORY STATEMENT ...................................................................................1

II.  BRIEF STATEMENT OF THE ISSUES TO BE DECIDED ...........................................1

III.  STATEMENT OF FACTS ...............................................................................................2

    A.  Liberty's Settlement Agreement with the Ohio Attorney General .................................2

    B.  Vendor Defendants' Settlement with the Ohio Attorney General ..................................4

    C.  Plaintiffs' Class Action Complaint ...............................................................................6

IV.  LAW AND ARGUMENT .................................................................................................7

    A.  This Court lacks Subject Matter Jurisdiction over Plaintiffs' Claims ...........................7

      i.  Legal Standard: Motion to Dismiss Pursuant to Rule 12(b)(1)...............................7

      ii.  This Court Lacks Subject Matter Jurisdiction Because Plaintiffs' Claims Against Liberty HealthShare are Moot Pursuant to the Liberty Settlement Agreement ......................8

    B.  Alternatively, Plaintiffs' Claims are Barred by Res Judicata.............................................12

      i.  Legal Standard: Motion to Dismiss Pursuant to Rule 12(b)(6)...................................12

        a. Res judicata may be raised by way of a Rule 12(b)(6) motion ...................................13

        b. The Court can consider the Settlement Agreements as they are public records............13

      ii.  Ohio Law Applies to the Application of *Res Judicata* in this Case............................14

      iii.  All of the Elements of Res Judicata are Met in this Case ............................................15

        a. The Settlement Agreement is a final, valid, adjudication on the merits........................15

        b. Plaintiffs' Complaint Involves the Same Parties or Their Privies as the Liberty Settlement Agreement......................................................................................................18

        c. Liberty's Settlement Agreement with the Attorney General Addresses and Encompasses the Subject Matter of Plaintiffs' Claims ...........................................................................18

        d. Plaintiffs' Claims Arise out of the Same Transactions and Occurrences that were the Subject Matter of the Attorney General Investigation and Liberty Settlement Agreement ....................................................................................................................................21

V.  CONCLUSION .................................................................................................................22

CERTIFICATE OF COMPLIANCE.................................................................................24

CERTIFICATE OF SERVICE ........................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Alaska Sport Fishing Assn. v. Exxon Corp.*, 34 F.3d 769 (9th Cir. 1994) ........................... 9, 18, 19

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592 (1982).................. 10, 18

*Brown v. Dayton,* 89 Ohio St.3d 245, 248, 730 N.E.2d 958, 2000-Ohio-148 (2000)....... 10, 16, 18

*Clark v. Haas Group*, 953 F.2d 1235, 1238 (10th Cir. 1992)................................................... 19, 20

*Clinton v. Brown & Williamson Holdings, Inc.*, 498 F. Supp. 2d 639 (S.D. N.Y. 2007)..............16

*Dubuc v. Green Oak Tp.*, 312 F.3d 736, 748 (6th Cir. 2002) ............................................................19

*Girard v. Trumbull Cty. Budget Comm.*, 70 Ohio St.3d 187, 638 N.E.2d 67 (1994)....................15

*Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995) ............................... 15, 18, 21

*Hapgood v. City of Warren*, 127 F.3d 490 (6th Cir. 1997)..............................................................15

*Harrison v. Montgomery Cty*, 997 F.3d 643, 648 (6th Cir. 2021)...................................................15

*Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 921 S.Ct. 885 (1972)..................................9, 18

*Hutchison v. Parent*, 773 Fed.App'x. 288 (6th Cir. 2019)..............................................................15

*In re Suwinski*, 509 B.R. 568 (S.D. Ohio 2013) ..........................................................................9, 18

*Kashnier v. Donnelly*, 81 Ohio App.3d 154, 610 N.E.2d 519 (9th Dist. 1991)............................15

*King v. HSBC Bank Nevada, N.A.*, 980 F. Supp. 2d 1346 (D. New Mexico 2013) .......... 11, 19, 21

*Marrese v. American Academy of Orthopedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985)............................................................................................................................14

*Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 85, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) ...........................................................................................................................................14

*Monaco v. Mitsubishi Motor Credit of America, Inc.*, 34 Fed.Appx. 42 (3d Cir. 2002) ..............21

*Ohio ex rel. Boggs v. City of Cleveland,* 655 F.3d 516, 510 (6th Cir. 2011)..................................15

*Perez v. Gordon & Wong Law Group, P.C.*, 2012 WL 1029425 (N.D. Cal Mar. 26, 2012) ........16

*Rogers v. Whitehall*, 25 Ohio St.3d 67 (1986)...........................................................................8, 18

*Shea v. American Tobacco Co.*, 73 A.D.3d 730, 901 N.Y.S.2d 303 (2d Dep't 2010)...................16

*State el rel. Schachter v. Ohio Pub. Emps. Retirement Bd.*, 121 Ohio St.3d 526, 905 N.E.2d 1210, (2009)...........................................................................................................................................18

*State ex rel. Findlay Publ'g Co. v. Hancock Cty. Bd. of Commrs.*, 80 Ohio St.3d 134, 684 N.E.2d 1222 ........................................................................................................................................2, 14

*State ex rel. Republic Servs. of Ohio II, L.L.C. v. Pike Twp. Bd. of Trustees*, 5th Dist. Stark No. 2007CA00344, 2009-Ohio-172 ................................................................................................16

*State v. Seaport Manor A.C.F.*, 19 A.D.3d 609, 797 N.Y.S.2d 538 (2005)...................................17

*State, ex rel. Fisher v. Okum's Furniture & Appliance Co.*, 1st Dist. Hamilton No. C-940254, 1995 WL 566633 ...............................................................................................................................16

*Talismanic Properties, LLC v. City of Tipp City, Ohio*, 742 F. App'x 129, 131 (6th Cir. 2018).14, 15

*U.S. ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399 (6th Cir. 2016).........................21

*Wyatt v. Wyatt*, 65 Ohio St.3d 268, 602 N.E.2d 1166, 1168 (1992) ..............................................15

## Statutes

U.S. Const. Art. III § 2…………………………………………………………………………..8

18 U.S.C. § 1962(c)............................................................................................................…….7, 20

26 U.S.C. § 5000A(d)(2)(B)(ii)………………………………………………………...………...2

R.C. § 109.23………………………………………………………………………………...…..2

R.C. § 109.24…………………………………………………………………………3, 6, 17

R.C. § 149.011 (G)……………………………………………………………………………....2

R.C. § 149.43……………………………………………………………………………...……..2

R.C. § 1716…………………………………………………………………………...…..…3, 6

R.C. § 1716.01(A)………………………………………………………………………………2

R.C. §  1716.07………………………………………………………………………………5

## Rules

Fed. R. Civ. P. 12(b)(1)……………………………………………………….………2, 7, 8

Fed. R. Civ. P. 12(b)(6)………………………………………………...…………..2, 7, 12, 13

Fed. R. Evid. 201……………………………………………………………………….2, 5

## Other Authorities

Restatement of Restitution………………………………………………………………..…11

<u>MEMORANDUM IN SUPPORT</u>

I.    <u>INTRODUCTORY STATEMENT AND SUMMARY OF THE ARGUMENTS</u>

Plaintiffs' First Amended Class Action Complaint seeks redress on behalf of current and former members of Liberty HealthShare. (First Amend. Compl., ECF No. 76, "Compl.").  In so doing, Plaintiffs inappropriately attempt to litigate claims that have already been resolved by a settlement agreement between the Ohio Attorney General—acting in his *parens patriae* capacity— and Liberty. Indeed, the Ohio Attorney General, acting on behalf of former and current members of Liberty HealthShare, conducted a charitable investigation into Liberty HealthShare and most other named Defendants in the First Amended Complaint, and has resolved and released the claims against Liberty, and others, pursuant to an expansive settlement agreement dated March 15, 2021. Because the claims set forth in the First Amended Complaint address the same alleged transactions and occurrences that were the subject matter of the Attorney General's investigation, and because the Plaintiffs stand in privity with the Ohio Attorney General pursuant to the *parens patriae* doctrine, Plaintiffs' claims against Liberty are moot and must be dismissed pursuant to Rule 12(b)(1). Alternatively, Plaintiffs' claims are precluded by res judicata and must be dismissed in accordance with Rule 12(b)(6).

II.    <u>BRIEF STATEMENT OF THE ISSUES TO BE DECIDED</u>

Liberty HealthShare sets forth the following issues to be decided:

1.    Should Plaintiffs' claims be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, where the claims are moot based on a prior settlement agreement?

2.    Should Plaintiffs' claims be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, where the claims have previously been resolved pursuant to a settlement agreement?

## III.  STATEMENT OF FACTS

Defendant Liberty HealthShare is a Virginia nonprofit organization with its principal place of business in Canton, Ohio. (Compl., ¶ 19.) Liberty HealthShare has been recognized by Centers for Medicare and Medicaid Services ("CMS") as a healthcare sharing ministry under Section 5000A(d)(2)(B)(ii) of the Affordable Care Act.[1] (*See* Settlement Agreement dated March 15, 2021 between the Ohio Attorney General and Liberty HealthShare, Defendant Druzilla Abel ("Abel"), and Defendant Dale Bellis, ("Dale Bellis") *et al.* (the "Liberty Settlement Agreement"), a true and accurate copy of which is attached hereto as **Exhibit A-1**, ¶ 1.(K)).[2] (*See also* March 31, 2014 Letter from CMS to Gospel Light, a true and accurate copy of which is attached hereto as **Exhibit B**). Liberty HealthShare is a charitable organization as that term is defined in R.C. 1716.01(A) and a charitable trust as that term is defined in R.C. 109.23. (Liberty Settlement Agreement, ¶ 1.(F)). Defendants Abel and Bellis have served as officers and/or directors of Liberty HealthShare. (Compl., ¶¶ 27 and 31.)

### A.  Liberty's Settlement Agreement with the Ohio Attorney General

In 2018, pursuant to his statutory and common law authority, the Ohio Attorney General directed that the Charitable Law Section of the Attorney General's Office investigate under R.C. 109.24 whether property held by Liberty HealthShare for charitable, religious or educational purposes "has been and is being properly administered in accordance with fiduciary principles"

---

[1] "Under this type of cost-sharing plan, members—typically those of the same religious faith—make monthly payments that are used to cover the medical bills of others in the group, including themselves, their family, and other members…" (Compl., ¶ 35.)

[2] A settlement agreement with the Ohio Attorney General constitutes a public record. *See State ex rel. Findlay Publ'g Co. v. Hancock Cty. Bd. of Commrs.*, 80 Ohio St.3d 134, 136, 684 N.E.2d 1222 ("a settlement agreement … in which a public office is a party is a public record subject to disclosure under R.C. 149.43. … Settlement agreements document decisions and activities of the public office. R.C. 149.011(G).") (internal citations omitted). See also Fed. R. Evid. 201. Attached to this Memorandum, Defendants have filed, as **Exhibit A**, the Declaration of Dorsey Morrow, which authenticates the Liberty Settlement Agreement. Pursuant to Fed. R. Evid. 201, the Court may take judicial notice of the Liberty Settlement Agreement as it is a public record and properly authenticated by the attached declaration of Dorsey Morrow. For further analysis, *see* Section IV(B)(i)(b) below.

and Ohio statutes, and whether Liberty HealthShare has "properly complied with R.C. Chapter 1716 regarding the conduct of charitable solicitations." (Liberty Settlement Agreement, ¶ 1.(H)). On March 15, 2021, following a lengthy and in-depth investigation, the Ohio Attorney General Liberty, Abel, and Bellis entered into the Liberty Settlement agreement, by which the parties resolved "all issues, allegations, and/or claims between and among them" arising out of the charitable investigation. (Liberty Settlement Agreement, ¶ 1.(T)).

The Attorney General's investigation was expansive, and so was the Settlement Agreement it entered into with Liberty. As part of the resolution of the investigation, Liberty HealthShare was required to:

(1) Appoint, subject to the Attorney General's review and approval,  two new, outside and independent Board members with expertise or experience in health care claims administration, law, finance or accounting, or business management;

(2) Revise its executive reporting procedures such that the Chief Financial Officer and Chief Legal Counsel for Liberty shall report directly to the Board of Directors of Liberty HealthShare;

(3) Disengage from its auditing firm and retain, subject to review and approval by the Attorney General, a new and independent auditing firm for all audit engagements, including its annual filings with the IRS and Attorney General's office;

(4) Include cost-containment vendor expenses and disclose total and net "sharepower" on its IRS form 990  and its audited financial statements beginning for fiscal year 2020 and beyond;

(5) Enter into a Termination Agreement with Abel (the then Chief Executive Officer) and appoint a new person to fill that role – subject to approval of the Attorney General;

(6) Terminate its relationship with Dale Bellis (the "founding" CEO) as of the expiration of his Executive Employment Agreement;

3

(7) Implement and utilize a competitive and objective vendor-selection process approved by the Board of Directors of Liberty HealthShare, and agree not to renew or enter into any contract with Defendants The Medical Cost Savings Solution, Ltd., SavNet International, LLC, or Cost Sharing Solutions, LLC without utilizing the approved competitive process;

(8) Pay the Attorney General $20,000.00 for the reasonable costs of investigation and $50,000.00 for reasonable attorneys' fees;

(9) Cooperate with the Attorney General regarding the charitable investigation as to other potential targets, as well as cooperate in any litigation arising from such investigation.

(Liberty Settlement Agreement, ¶ 3-12).

In exchange for Liberty fulfilling the above requirements, the Ohio Attorney General agreed to release Liberty HealthShare fully and completely from any and all claims and causes of action of any nature or kind, both known and unknown, arising from the charitable investigation. (Liberty Settlement Agreement, ¶ 13.(B)). The Attorney General further agreed to fully and completely release Abel and Dale Bellis from any and all claims and causes of action of any nature or any kind, both known and unknown, arising from the charitable investigations for any acts and/or omissions in their capacity as Board members and/or officers of Liberty HealthShare. (Liberty Settlement Agreement, ¶ 13.(A)).

B.    **Vendor Defendants' Settlement with the Ohio Attorney General**

As part of the investigation into Liberty, the Ohio Attorney General, "in his role as *parens patriae* to protect the intended beneficiaries of charitable trusts including, but not limited to, current and former members of Liberty HealthShare," directed that the Charitable Law Section of the Ohio Attorney General's Office investigate the acts and omissions of certain vendors of Liberty HealthShare, namely Defendants Daniel J. Beers, Cost Sharing Solutions LLC, Daniel Beers II, Ronald Beers, Brandon Fabris, The Medical Cost Savings Solution, Ltd., and Thomas Fabris (the

"Vendor Defendants"). (*See* Settlement Agreement between Vendor Defendants and Ohio Attorney General, a copy of which is attached hereto as **Exhibit C** (the "Vendor Settlement Agreement"), ¶ 1.(S)).[3] This investigation resulted in the execution of a separate settlement agreement between the Ohio Attorney General and the Vendor Defendants. The Vendor Settlement Agreement expressly states that, through the investigation, "the Attorney General sought, in part, **to collect monies from the Vendor Parties from the amounts they were paid by Liberty HealthShare, for the benefit of the intended charitable beneficiaries of Liberty HealthShare**." (Vendor Settlement Agreement, ¶ 1.(T) (Emphasis added)). Pursuant to the Vendor Settlement Agreement, the Vendor Defendants agreed to the following:

(1) Defendant Cost Sharing Solutions LLC agreed to take all steps to register as a professional solicitor with the Charitable Law Section of the Ohio Attorney General's office pursuant to R.C. 1716.07 (Vendor Settlement Agreement, ¶ 2.(A));

(2) The Vendor Defendants agreed to pay $20,000.00 for the reasonable costs of the investigation and $30,000.00 for reasonable attorneys' fees incurred in conjunction with the charitable investigation (Vendor Settlement Agreement, ¶ 3.(A));

(3) The Vendor Defendants agreed to pay $5,850,000.00 (five million, eight hundred fifty thousand dollars and zero cents) in payments to the Ohio Attorney General, **which payments are to be redistributed by the Attorney General to or for the ultimate benefit of current or former members of Liberty Healthshare for the "Potential Charitable Claims and Causes of Action."** Potential Charitable Claims and Causes of Action is a defined term in the Vendor Settlement Agreement and expressly includes:

> "…any and all claims, causes of actions, legal theories, remedies at
> law or in equity, or other forms of relief under the authority of the

---

[3] As a public record, pursuant to Fed. R. Evid. 201, the Court may take judicial notice of the Vendor Settlement Agreement.

> Attorney General pursuant to R.C. 109.24, R.C. Chapter 1716, and under common law as it relates to the administration of charitable trusts, including, but not necessarily limited to claims to recover excess benefits or compensation from the Vendor Parties under the common law, the use or misuse of charitable funds, breaches of fiduciary duty, any claims predicated on violations of R.C. Chapter 1716, or any other claims predicated on an abuse of charitable trust under R.C. 109.24, or any alleged relationship between the Vendor Parties or their principals or agents and Liberty HealthShare, including but not limited to any conspiracy to commit any of the above-referenced acts.".

(Vendor Settlement Agreement,¶ 3.(B) (Emphasis added)).

As consideration for these obligations, the Ohio Attorney General agreed to release the Vendor Defendants from all claims and causes of action relating to the charitable investigation. (Vendor Settlement Agreement, ¶ 4.(C).

### C.    <u>Plaintiffs' First Amended Class Action Complaint</u>

Plaintiffs filed their First Amended Class Action Complaint on November 14, 2022. The three named Plaintiffs are current or former members of Liberty HealthShare. (Complaint, ¶¶ 16-18). The putative class is defined as "all current and former participants in Liberty plans from 2013 forward (the "Class Period") who fulfilled their responsibility to make periodic payments to Liberty to participate in plans presented as HCSMs [Health Care Sharing Ministries]." (Compl., ¶ 140). At the heart of Plaintiffs' First Amended Complaint—which includes claims for breach of contract, money had, unjust enrichment, violations of 18 U.S.C. § 1962(c), conversion, breach of fiduciary duty, intentional, or negligent, misrepresentation, and accounting—is the central allegation that payments Plaintiffs made to Liberty HealthShare were misappropriated by Defendants and used to make "excessive and/or unnecessary expenses or other payments," to the detriment of the putative class members. (Compl., ¶¶ 115, 130, 163, 169-170, 182, 211, 219, 233, 242(c), 247, 256.). However, these allegations were investigated by the Ohio Attorney General and resolved as to Liberty (along with Abel and Dale Bellis) under the expansive terms of the

Liberty Settlement Agreement. Plaintiffs' claims were further addressed and resolved by the Vendor Settlement Agreement, under which the Ohio Attorney General will receive and administer $5,850,000.00 "**to be redistributed by the Attorney General to or for the ultimate benefit of current or former members of Liberty**." (Vendor Settlement Agreement, ¶ 3.(B) (Emphasis added). Thus, the Ohio Attorney General, acting on behalf of the current and former members of Liberty HealthShare pursuant to the *parens patriae* doctrine, released Liberty and others from further claims related to the charitable investigation. This serves to moot the claims set forth in Plaintiffs' First Amended Complaint, thereby divesting this Court of subject matter jurisdiction. For this reason, Plaintiffs' First Amended Complaint should be dismissed pursuant to Rule 12(b)(1). Alternatively, and additionally, Plaintiffs' claims are barred pursuant to the doctrine of res judicata and must be dismissed under Rule 12(b)(6).

## IV.    LAW AND ARGUMENT

### A.    This Court lacks Subject Matter Jurisdiction over Plaintiffs' Claims

#### i.    Legal Standard: Motion to Dismiss Pursuant to Rule 12(b)(1)

Pursuant to the U.S. Constitution, jurisdiction of courts is confined to hearing live cases or controversies. *See* U.S. Const. Art. III § 2; *International Union, United Auto., Aerospace, Agr. And Implement Workers of America v. Dana Corp.*, 697 F.2d 718, 720 (6th Cir. 1983). As such, under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed if a court does not have subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion to dismiss pursuant to Rule 12(b)(1) is a challenge to the factual existence of subject matter jurisdiction—regardless of what the complaint states, the factual predicates of subject matter jurisdiction must be apparent for a complaint to survive. *Wright v. U.S.*, 82 F.3d 419 (Table), 1996 WL 172119, at *4 (6th Cir. April 11, 1996) citing *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 280 (1936). "In considering a Rule 12(b)(1) motion, we may look beyond the jurisdictional allegations in the complaint and consider

submitted evidence." *Taylor v. KeyCorp*, 680 F.3d 609, 612 (6th Cir. 2012); *see also Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) citing *Rogers v. Stratton Industries*, 798 F.2d 913, 916 (6th Cir. 1986). ("In reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits"). "The plaintiff bears the burden of establishing that jurisdiction exists." *Id.*, citing *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003).

Mootness is a question of jurisdiction. *International Union, United Auto., Aerospace, Agr. and Implement Workers of America v. Dana Corp.*, 697 F.2d, at 720. Generally, existence of a signed settlement agreement renders a case moot, as no real or substantial controversy remains. *Id.*; *see also Pettrey v. Enterprise Title Agency, Inc.*, 584 F.3d 701, 703 (6th Cir. 2009) citing *Brunet v. City of Columbus*, 1 F.3d 390, 399 (6th Cir. 1993) ("Generally speaking, 'settlement of a plaintiff's claims moots an action.'") A settlement agreement that releases claims against defendants destroys a plaintiff's legally cognizable interest in the outcome of a litigation, as any actual issues have been resolved. *Pettrey v. Enterprise Title Agency, Inc.*, 584 F.3d, at 703.

ii.     **This Court Lacks Subject Matter Jurisdiction Because Plaintiffs' Claims Against Liberty HealthShare are Moot Pursuant to the Liberty Settlement Agreement.**

Pursuant to the Liberty Settlement Agreement, the Ohio Attorney General fully and completely released Liberty HealthShare from any and all claims and causes of action of any nature or any kind, both known and unknown, arising from the charitable investigation. (Liberty Settlement Agreement, ¶¶ 13A, 13B). Because the Ohio Attorney General was acting in his *parens patriae* capacity in resolving the claims with Liberty HealthShare, Plaintiffs stand in privity with the Ohio Attorney General, rendering Plaintiffs' claims against Liberty HealthShare moot. This mootness destroys Plaintiffs' "legally cognizable interest in the outcome" of this litigation, as the

Ohio Attorney General has already investigated and resolved the claims on their behalf. *Pettrey v. Enterprise Title Agency, Inc.*, 584 F.3d, at 703.

Parens patriae is a form of privity. *See In re Suwinski*, 509 B.R. 568, 572 (S.D. Ohio 2013) (the attorney general's power in "contesting infringements on the rights of the general public via the doctrine of parens patriae" is long established); *see also Alaska Sport Fishing Assn. v. Exxon Corp.*, 34 F.3d 769, 773 (9th Cir. 1994). The doctrine of *parens patriae* is well-established as a mechanism where a government maintains an action on behalf of its citizens to prevent or repair harm to the government's 'quasi-sovereign interests.' *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 258, 921 S.Ct. 885 (1972). Largely, a state attorney general acts as a 'parent' and contests claims "on the rights of the general public." *See In re Suwinski*, 509 B.R. 568, 572 (S.D. Ohio 2013). "[T]here is thus the duty of the *parens patriae* to keep faith with those who have put their trust in the parental power." *Id*. Under the doctrine of *parens patriae*, "a state that is a party to a suit involving a matter of sovereign interest is presumed to represent the interests of all its citizens," and thereby adequately represents their interests. *Alaska Sport Fishing Assn. v. Exxon Corp.*, 34 F.3d at 773; *see Richards v. Jefferson County, Ala.*, 517 U.S. 793, 798-99 (1996) ('class' or 'representative suits' are a recognized exception to the general requirement that one must have been a party in a judgment to be bound by it, where a person's interests, although not a party, are adequately represented by someone with the same interests who is a party); *see also Citizen for Open Access to Sand and Tide, Inc. v. Seadrift Ass'n*, 60 Cal.App.4th 1053 (1st Dist. Cal.) (holding that the public as a whole was adequately represented by the state agencies vested with authority to litigate the issue of public access to property in question, although not parties to the original settlement agreement, due process allows for privity because the nonparties have an identity or common interest with, and adequate representation by, the party in the first action.)

In order to maintain a *parens patriae* action, a state must have an interest apart from the interests of the private parties. *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 593 (1982). In this regard, it is well-established that a state has a "quasi-sovereign interest, such as its interest in the health and well-being—both physical and economic—of its residents in general." *Id*. To determine whether an alleged injury to the health and welfare of its citizens suffices to afford the state standing to sue, one must "consider the indirect effects of the injury" and "whether the injury is one that the state, if it could, would likely attempt to address through its sovereign lawmaking powers." *Id*. at 607. The doctrine of *parens patriae* is deeply rooted in the state's ability to supervise acts of the public and charitable institutions in the interest of those benefitted. *See Late Corp. of the Church of Jesus Christ of Latter-Day Saints v. U.S.*, 136 U.S. 1, 56-57, 10 S.Ct. 792 (1890) ("in this country, the legislature or government of the state, as parens patriae, has the right to enforce all charities of a public nature, by virtue of its general superintending authority over the public interests, where no other person is in trusted with it.")

"One of the recognized powers held by the attorney general at common law was 'to inquire into any abuses of charitable donations.'" *Brown v. Concerned Citizens for Sickle Cell Anemia, Inc.*, 56 Ohio St.2d 85, 90, 382 N.E.2d 1155 (1978). In seeking to protect the public interest, an attorney general may impose a constructive trust on funds collected for charitable purposes, but subsequently diverted to other purposes. *Id.*, at 91 citing Restatement of Restitution 640, 688, Sections 160 and 169, cmt. c. There is no doubt that a government has an important interest in preventing wrongdoing by charitable organizations. *Americans for Prosperity Foundation v. Bonta*, 141 S.Ct. 2373, 2386-87 (2021). "[T]here is a 'substantial governmental interest[] in

protecting the public from fraud.'" *Id.* citing *Schaumburg v. Citizens for Better Environment*, 444 U.S. 620, 636, 100 S.Ct., 826 (1980).[4]

For example, in *New Mexico ex rel., King v. Capital One Bank*, the District of New Mexico addressed whether a state attorney general could recover damages on behalf of consumers who were already compensated by a prior national settlement. *New Mexico ex rel., King v. Capital One Bank*, 980 F. Supp. 2d 1346 (D. New Mexico 2013). The New Mexico Attorney General sought restitution for consumers who subscribed to Capital One's payment-protection plans, after Capital One already reached a nationwide settlement resolving the same. *Id*. Holding that the Attorney General's claims were barred by res judicata, the court noted that the settlement agreement discharged claims of all class members or those who assert on their behalf, in *parens patriae*. *Id*.

Here, like in *King,* privity is established. The Liberty Settlement Agreement addresses the Attorney General's investigation into whether Liberty HealthShare engaged in charitable misconduct vis-à-vis its members. The Liberty Settlement Agreement resolves all issues, allegations, and/or claims regarding whether property held by Liberty, and certain others, for charitable, religious, or educational purposes was being properly administered. (Liberty Settlement Agreement, ¶¶ 1.(H), 1.(T)). In exchange for Liberty HealthShare agreeing to the requirements of the Liberty Settlement Agreement, the Ohio Attorney General fully and completely released Liberty HealthShare from any and all claims, and causes of action of any nature or kind, both known and unknown, arising from the charitable investigation. (Liberty Settlement Agreement, ¶ 13.(B)). The Attorney General further agreed to fully and completely release Abel and Dale Bellis from any and all claims and causes of action of any nature or any kind, both known and

---

[4] Noting that the "Attorney General receives complaints each month that identify a range of misconduct, from 'misuse, misappropriation, and diversion of charitable assets,' to 'false and misleading charitable solicitations,' to other 'improper activities by charities soliciting charitable donations.' Such offenses cause serious social harms. And the Attorney General is the primary law enforcement officer charged with combating them."

unknown, arising from the charitable investigations for any acts and/or omissions in their capacity as Board members and/or officers of Liberty HealthShare. (Liberty Settlement Agreement, ¶ 13.(A)).

The fact that the Attorney General acted on behalf of the current and former members of Liberty HealthShare is further evidenced by the terms of the Vendor Settlement Agreement. The Vendor Defendants agreed to pay $5,850,000.00 "to be redistributed by the Attorney General **to or for the ultimate benefit of current or former members of Liberty**." (Vendor Settlement Agreement 3.(B)) (emphasis added). The Attorney General also expressly stated that it was acting in its *parens patraie* capacity and sought "to collect monies from the Vendor Parties from the amounts they were paid by Liberty HealthShare, for the benefit of the intended charitable beneficiaries of Liberty HealthShare." (Vendor Settlement Agreement, ¶ 1.(T)).

In short, Plaintiffs' claims were addressed in the Attorney General's investigation, and the Attorney General resolved these claims on Plaintiffs' behalf pursuant to the settlement agreements that resulted. Because Plaintiffs stand in privity with the Ohio Attorney General pursuant to the doctrine of *parens patraie*, Plaintiffs' claims are moot and should be dismissed.

**B.** **Alternatively, Plaintiffs' Claims are Barred by Res Judicata.**

**i.** **Legal Standard: Motion to Dismiss Pursuant to Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a court should grant a motion to dismiss when a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To support its claim, "Plaintiff must offer 'either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Forsher*

12

*v. J.M. Smucker Co.,* No. 5:19CV00194, 2020 WL 1531160, at *2 (N.D. Ohio Mar. 31, 2020) (quoting *St. Clair v. Kroger Co.*, 581 F. Supp. 2d 896, 899 (N.D. Ohio 2008)).

### a. Res judicata may be raised by way of a Rule 12(b)(6) motion

"Overwhelming" federal case law demonstrates that a party may raise a res judicata defense via a motion to dismiss pursuant to 12(b)(6) in federal court. *DeNune v. Consol. Cap. of N. Am., Inc*., 288 F. Supp. 2d 844, 852 (N.D. Ohio 2003) (citing *e.g.*, *Rushford v. Firstar Bank, N.A.,* 50 Fed. App'x. 202, 203 (6th Cir. 2002) (affirming "the district court's dismissal pursuant to Fed.R.Civ.P. 12(b)(6) based on the doctrine of res judicata"); *City of Canton v. Maynard*, 766 F.2d 236, 239 (6th Cir. 1985) (per curiam) (affirming district court's rule 12(b)(6) dismissal on res judicata grounds).)  *See also Smith v. Lerner, Sampson & Rothfuss, L.P.A.*, 658 F. App'x 268, 275 (6th Cir. 2016).

### b. The Court can consider the Settlement Agreements as they are public records

Courts may consider certain documents outside of the pleadings without converting a motion to dismiss into a motion for summary judgment. *See Thomas v. Noder-Love*, 621 F. App'x 825, 829-30 (6th Cir. 2015). Such documents include, "exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss." *Id.*, at 828; *accord In re Huffy Corp. Sec. Litig.*, 577 F. Supp. 2d 968, 978-79 (S.D. Ohio 2008).  *See also Doe v. SexSearch.com*, 551 F.3d 412, 416 (6th Cir. 2008) (citing *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (when considering a motion to dismiss, while the court's analysis "primarily focuses is on the complaint, 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint…may be taken into account.'")

Here, the Settlement Agreements with the Ohio Attorney General are public records pursuant to Evidence Rule 201; their existence is "not subject to reasonable dispute because it …

can be accurately and readily determined from sources [i.e., the public records of the Attorney General] whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).[5] Moreover, as they are being presented for res judicata purposes, it is the *existence* of the Agreements that is paramount.

Accordingly, even though the Settlement Agreements are not attached to the First Amended Complaint, they can and should be considered in the context of the present Motion to Dismiss.

### ii.    Ohio Law Applies to the Application of Res Judicata in this Case

The law of the forum state is controlling as to the applicability of the doctrine of res judicata in an action in a federal court, where the issues involved in the prior judgment were issues of state law. *See Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 85, 87, 104 S.Ct. 892, 898, 79 L.Ed.2d 56 (1984) ("petitioner's state-court judgment in this litigation has the same claim preclusive effect in federal court that the judgment would have in the Ohio state courts. …Our holding today makes clear that Ohio state preclusion law is to be applied to this case.") *See also Talismanic Properties, LLC v. City of Tipp City, Ohio*, 742 F. App'x 129, 131 (6th Cir. 2018) ("To determine whether *res judicata* bars [plaintiff's] claims, we look to the rules of *res judicata* in the forum that decided the first case—here, Ohio."); *Marrese v. American Academy of Orthopedic Surgeons*, 470 U.S. 373, 379-380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) (when a court considers "[t]he preclusive effect of a state court judgment in a subsequent federal lawsuit[,]" a federal court is to "refer to the preclusion law of the State in which judgment was rendered[,]" not the federal court's own res judicata rules.) The Sixth Circuit has applied this proposition to state administrative

---

[5] *See also State ex rel. Findlay Publ'g Co. v. Hancock Cty. Bd. of Commrs.*, 80 Ohio St.3d 134, 136, 684 N.E.2d 1222 ("a settlement agreement … in which a public office is a party is a public record subject to disclosure under R.C. 149.43. … Settlement agreements document decisions and activities of the public office. R.C. 149.011(G)") (internal citations omitted).

14

proceedings as well.  *See Harrison v. Montgomery Cty*, 997 F.3d 643, 648 (6th Cir. 2021) (applying these maxims to tax foreclosure adjudication before the county board of revision.)

### iii.  All of the Elements of Res Judicata are Met in this Case

Res judicata is made up of four elements under Ohio law: "(1) a prior suit litigated to a final, valid decision on the merits; (2) the same parties as in the prior suit, or their privies; (3) a second suit that raises claims that 'were or could have been litigated' in the prior suit; and (4) claims in the second suit that 'aris[e] out of the transaction or occurrence that was the subject matter' of the prior suit." *Talismanic Properties*, 742 F. App'x at 131 (6th Cir. 2018) quoting *Ohio ex rel. Boggs v. City of Cleveland,* 655 F.3d 516, 510 (6th Cir. 2011) quoting *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997).

### a.  The Settlement Agreement is a final, valid, adjudication on the merits

Under Ohio law, a "final judgment rendered upon the merits" need not stem from a court: Res judicata, whether claim preclusion or issue preclusion, applies to quasi-judicial administrative proceedings as well. *See Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381, 653 N.E.2d 226 (1995); *Girard v. Trumbull Cty. Budget Comm.*, 70 Ohio St.3d 187, 193, 638 N.E.2d 67 (1994).  Further, a settlement agreement can constitute a final adjudication on the merits for purposes of claim preclusion. *Kashnier v. Donnelly*, 81 Ohio App.3d 154, 156, 610 N.E.2d 519 (9th Dist. 1991) ("a judgment entered by consent, although predicated upon an agreement between the parties, is an adjudication as effective as if the merits had been litigated and remains, therefore, just as enforceable as any other validly entered judgment, for res judicata purposes"). *See also Wyatt v. Wyatt*, 65 Ohio St.3d 268, 602 N.E.2d 1166, 1168 (1992) (holding that *res judicata* barred a plaintiff's claim for child support because she had settled this claim in an Alaska state court); *Hutchison v. Parent*, 773 Fed.App'x. 288 (6th Cir. 2019) (res judicata barred minority member from litigating in federal court claims that had been dismissed in state court consent judgment);

*Daniel v. Shorebank Cleveland*, 8th Dist. Cuyahoga No. 92832, 2010-Ohio-1054, ¶ 5 (applying *res judicata* to prior settlement agreement); *State ex rel. Republic Servs. of Ohio II, L.L.C. v. Pike Twp. Bd. of Trustees*, 5th Dist. Stark No. 2007CA00344, 2009-Ohio-172 (same).

Ohio courts, as well as other jurisdictions, have applied these principles to consent agreements between a state attorney general and private parties in *parens patriae* matters. *See State, ex rel. Fisher v. Okum's Furniture & Appliance Co.*, 1st Dist. Hamilton No. C-940254, 1995 WL 566633, *6 (concluding that *res judicata* barred subsequent lawsuit by attorney general against appellees where Ohio Attorney General had entered into a consent agreement with appellees, in an earlier proceeding, to settle alleged consumer protection violations). *See also Clinton v. Brown & Williamson Holdings, Inc*., 498 F. Supp. 2d 639 (S.D. N.Y. 2007) (settlement agreement between state of New York and defendant tobacco companies entered in a *parens patriae* matter by the New York Attorney General, precluded, under doctrine of res judicata, widow's claim for punitive damages based on husband's death from lung cancer); and *Shea v. American Tobacco Co*., 73 A.D.3d 730, 901 N.Y.S.2d 303 (2d Dep't 2010) (master settlement agreement between cigarette manufacturers and state barred under doctrine of res judicata later damages claims by spouses of deceased smokers against cigarette manufacturers).

Finally, Ohio law does not require that a settlement agreement actually be incorporated into a court record for it to constitute a "final adjudication on the merits." *See Daniel v. Shorebank Cleveland*, 8th Dist. Cuyahoga No. 92832, 2010-Ohio-1054. In *Daniel*, the Court emphasized that Ohio's public policy of finality of judgments is advanced by giving settlement agreements full res judicata effect. *Id*. at ¶ 15. Accordingly, the prior settlement agreement in *Daniel* was afforded full preclusive effect notwithstanding the fact that it was neither adopted by the court nor incorporated into any court order. *See id*. at ¶ 5. Other jurisdictions are instructive. *See Perez v. Gordon & Wong Law Group, P.C.*, 2012 WL 1029425, at *4 (N.D. Cal Mar. 26, 2012) (holding

16

that dismissal of a subsequent case pursuant to express terms of a private settlement agreement has preclusive effect); *State v. Seaport Manor A.C.F.*, 19 A.D.3d 609, 797 N.Y.S.2d 538 (2005) (holding that two prior Department of Health administrative enforcement proceedings which were discontinued with prejudice upon stipulations of settlement had res judicata effect as to state's subsequent action against adult care facility and its affiliates).

The Ohio Attorney General has authority as a regulator and protector of charitable assets. The Charitable law section of the Attorney General's office has a high level of expertise regarding the proper use of charitable assets and is required to regulate filed annual statements regarding the use of charitable assets through an online registration  system.[6]  Ohio Revised Code provides that in addition to his common law powers, the Attorney General "may investigate transactions and relationships of trustees of a charitable trust for the purpose of determining whether the property held for charitable, religious, or educational purposes has been and is being properly administered in accordance with fiduciary principles as established by the courts and statutes of this state …" R.C. 109.24.   Further, the Attorney General is directed to "institute and prosecute a proper action to enforce the performance of any charitable trust, and to restrain the abuse of it whenever he considers such action advisable or if directed to do so by the governor, the supreme court, the general assembly, or either house of the general assembly." *Id*

Importantly, Ohio law expressly provides that this statutory scheme "is intended to allow the attorney general full discretion concerning the manner in which the action is to be prosecuted, **including the authority to settle an action when he considers that advisable**." *Id*. (emphasis added). Thus, after a lengthy investigation, and following a settlement agreement, the Attorney General oversaw the fairness of the settlements in this case.

---

[6] *See* Ohio Attorney General Online Charitable Registration and Filing, https://charitable.ohioago.gov/Charity-Registration.

Based on the above, the Liberty Settlement Agreement between the Ohio Attorney General and Liberty HealthShare constitutes a final adjudication the merits that should be given preclusive effect under Ohio law and satisfies the first element of res judicata.

b. Plaintiffs' First Amended Complaint Involves the Same Parties or Their Privies as the Liberty Settlement Agreement

In order for res judicata to bar a subsequent action, the second action must involve the same parties or their privies. *Brown v. Dayton,* 89 Ohio St.3d 245, 248, 730 N.E.2d 958, 2000-Ohio-148 (2000). Courts apply a broad definition of privity to determine whether a relationship between parties is substantially close enough to invoke res judicata. *Id*.; *see also State el rel. Schachter v. Ohio Pub. Emps. Retirement Bd.*, 121 Ohio St.3d 526, 531, 905 N.E.2d 1210, 1217 (2009). Thus, mutuality of interest, including the identity of a desired result, creates privity. *Brown v. Dayton,* 89 Ohio St.3d, at 248.

As set forth in detail in Section IV(A)(ii) above, the element of privity is established given that the Attorney General acted in his *parens patriae* capacity in investigating and resolving the claims pursuant to the Liberty Settlement Agreement. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592 (1982); *In re Suwinski*, 509 B.R. 568 (S.D. Ohio 2013); *Hawaii v. Standard Oil Co. of Cal*., 405 U.S. 251, 921 S.Ct. 885 (1972).

c. Liberty's Settlement Agreement with the Attorney General Addresses and Encompasses the Subject Matter of Plaintiffs' Claims

It is well-established under Ohio law that res judicata not only bars subsequent actions involving the same legal theory of recovery as the previous action but is "conclusive as to all claims which were or might have been litigated in a first lawsuit." *Grava v. Parkman Twp*., 73 Ohio St.3d 379, 382, 653 N.E.2d 226, 1995-Ohio-331 (1995) (quoting *Rogers v. Whitehall*, 25 Ohio St.3d 67, 69 (1986)). Res judicata requires that there be a "substantial identity between the issues in controversy in both suits." *Alaska Sport Fishing Assn. v. Exxon Corp*., 34 F.3d at 773.

Mere allegations of new facts or legal issues in the second action cannot defeat application of res judicata. *See Dubuc v. Green Oak Tp*., 312 F.3d 736, 748 (6th Cir. 2002) (res judicata applies to subsequent conduct that "is part and parcel of the earlier incidents forming the basis of plaintiff's complaint."); *see also Clark v. Haas Group*, 953 F.2d 1235, 1238 (10th Cir. 1992) (plaintiffs cannot defeat application of res judicata by alleging new legal theories.) In *King v. HSBC Bank Nevada, N.A.*, a prior nationwide class action settlement relating to HSBC Bank's payment protection plans barred a subsequent prosecution by New Mexico's attorney general acting in *parens patriae*. *King v. HSBC Bank Nevada, N.A* , No. 13-cv-504 RHS/KBM, 2013 WL 12138908, at *3-4 (D. New Mexico, Dec. 16, 2013). The court reasoned that allowing attorney generals to bring claims would give class members an impermissible double recovery. *Id.*, at *2.

*Alaska Sport Fishing Assn.*, involved a putative class action filed by sports fishermen against Exxon for damages in connection with the Exxon Valdez oil spill.  Plaintiffs brought claims for negligence, nuisance, and violations of state statutes. The Court in *Alaska Sport Fishing Assn*. held that the fishermen's claims were barred by res judicata because the government had already recovered damages on behalf of the public through a settlement agreement. *Alaska Sport Fishing Assn. v. Exxon Corp*., 34 F.3d at 774.  Although the fishermen argued that their claims for 'pre-cleanup lost-use' were not at issue when prior suits were filed and that therefore there was no close relationship or substantial identity of interest between the government and plaintiffs, the court rejected this argument. The Court reasoned that the governments had the authority, under *parens patriae*, to recover for lost-use damages, and thus the damages were the same as those sought by the fishermen in their putative class action lawsuit. *Id*. The Court also rejected the fishermen's argument that their claims were "uniquely private" in that they could have been brought under a variety of statutes, including the federal Trans-Alaska Pipeline Authorization Act. *Id*. Thus, the

Court concluded that regardless of which statute the fishermen used as vehicle for their claims, the government already recovered the same damages. *Id*. at 774.

Here, Plaintiffs' First Amended Complaint addresses the same transactions and occurrences, i.e.,  the alleged wrongful solicitation, retention and misappropriation of Liberty member payments, which have already been investigated and resolved by the Attorney General. Moreover, the $5.8 million that the Attorney General is collecting from the Vendor Defendants will be administered by the Attorney General for the benefit of the putative class defined in the First Amended Complaint. i.e., former and current members of Liberty HealthShare. Efforts by Plaintiff to assert different legal theories such as violations of 18 U.S.C. § 1962(c) are insufficient, as Plaintiffs cannot avoid the application of res judicata simply by alleging new legal theories of recovering for the same transactions and occurrences. *See Clark v. Haas Group*, 953 F.2d 1235, 1238 (10th Cir. 1992).

Finally, it is notable that Plaintiffs' prayer for relief requests some of the same non-monetary relief accomplished by the Liberty Settlement Agreement, specifically the removal of several Defendants as trustees. These exact issues are addressed in the Liberty Settlement Agreement, as Dale Bellis and Abel have been prohibited from serving in any capacity on the Board, and two new Board members were appointed (following Attorney General vetting and approval) in their place. (Liberty Settlement Agreement, ¶ 3.(A)). Further, regarding Liberty HealthShare's relationships with the Vendor Defendants, which Plaintiff also seeks to enjoin, the Liberty Settlement Agreement expressly provides for the expiration and non-renewal of these vendor agreements, unless and until a new competitive process is adopted, approved, and utilized. (Liberty Settlement Agreement, ¶ 9).

In short, the claims asserted, and the relief sought by Plaintiffs are virtually identical to the issues addressed and resolved by the Liberty Settlement Agreement. Permitting this case to

proceed would result in impermissible double recovery. *See King v. HSBC Bank Nevada, N.A*, 2013 WL 12138908.[7]

> d. <u>Plaintiffs' Claims Arise out of the Same Transactions and Occurrences that were the Subject Matter of the Attorney General Investigation and Liberty Settlement Agreement</u>

When a claim is barred pursuant to res judicata, it extinguishes all rights of the plaintiff to remedies against the defendant with respect to a transaction, or series of transactions, out of which the cause of action arose. *Grava v. Parkman Twp.*, 73 Ohio St.3d 379 (1995). Factors relevant to determine whether the facts are so woven together to constitute a single claim are their relatedness in time, space, origin, or motivation, and when taken together, they form a convenient unit for trial purposes. *U.S. ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399 (6th Cir. 2016). Both actions need not be identical. *Id*. citing *Grava v. Parkman Twp.*, 73 Ohio St.3d 379 (1995) (holding that res judicata applies to extinguish a claim "even though the plaintiff is prepared in the second action (1) To present evidence or grounds or theories of the case not presented in the first action, or (2) To seek remedies or forms of relief not demanded in the first action."). Thus, a representative can enter into a settlement that bars future claims by class members "even though the precluded claim was not presented, and could not have been presented." *Monaco v. Mitsubishi Motor Credit of America, Inc.*, 34 Fed.Appx. 42 (3d Cir. 2002). But rather, the key inquiry is whether the factual predicate for future claims is identical to the factual predicate underlying the settlement agreement. *Id.*

---

[7] The issue of double recovery was also of concern to the Supreme Court in *Mississippi ex rel., Hood v. AU Optronics Corp.* During oral argument, Chief Justice Roberts specifically questioned, "what prevents attorney generals from around the country from sitting back and waiting…as private class actions proceed, and as soon as one settles or the plaintiff's class prevails, taking the same complaint, maybe even hiring the same lawyers, to go and say, well, now we are going to bring our *parens patriae* action." 571 U.S. 161 (2014) *oral argument transcript*.

Here, the Attorney General investigated whether property held by Liberty HealthShare, i.e., member donations, "has been and is being properly administered in accordance with fiduciary principles" and whether Liberty HealthShare has properly complied with requirements "regarding the conduct of charitable solicitations." (Liberty Settlement Agreement, ¶ 1.(H)). Pursuant to the Liberty Settlement Agreement, the Attorney General fully and completely released the Liberty from any and all claims and causes of action of any nature or any kind, both known and unknown, arising from the charitable investigation. (Liberty Settlement Agreement, ¶¶ 13.(A), 13.(B)).

Plaintiffs' First Amended Complaint relates to the same transactions and occurrences in that it seeks to recover for conduct related to Liberty's solicitations from former and current members from 2013 forward. As the Liberty Settlement Agreement became effective March 15, 2021, and this action was filed shortly thereafter, the matters relate to solicitations during the same period and from the same individuals, further evidencing that the factual predicate for the allegations in the First Amended Complaint is the same as that addressed by the Attorney General Investigation. In short, the Plaintiffs' claims stem from the same transactions and occurrences already addressed and resolved by the Attorney General, and, accordingly, Plaintiffs' First Amended Complaint is precluded by the doctrine of res judicata.

## V.    **CONCLUSION**

For the foregoing reasons, Defendant Gospel Light Mennonite Church Medical Aid Plan, Inc. d/b/a Liberty HealthShare respectfully requests that this Court dismiss Plaintiffs' First Amended Complaint.

Dated:  December 12, 2022

Respectfully submitted,

*/s/ Emily K. Anglewicz*
Ronald S. Kopp (0004950)
Rachael L. Russo (0070904)
Emily K. Anglewicz (0083129)
Lauryn T. Robinson (0101046)
**ROETZEL & ANDRESS, LPA**
One Cleveland Center – 10th Floor
1375 East Ninth Street
Cleveland, OH 44114
Phone: 216-623-0150
Fax: 216-623-0134
rkopp@ralaw.com
rrusso@ralaw.com
eanglewicz@ralaw.com
ltrobinson@ralaw.com

*Counsel for Defendant Gospel Light
Mennonite Church Medical Aid Plan, Inc.,
d/b/a. Liberty HealthShare*

23

**CERTIFICATE OF COMPLIANCE**

This case has not been assigned to a track and therefore pursuant to Local Rule 7.1, a memorandum in support of a motion to dismiss has a 20-page limit. The undersigned hereby certifies that leave to exceed the 20-page limit was sought and granted with respect to Liberty's Motion to Dismiss the original Complaint. (*See* ECF No. 43.)  The undersigned further certifies that Defendant Liberty HealthShare has filed a separate Motion requesting leave to exceed the 20-page limit for its Memorandum in Support of Liberty's Motion to Dismiss Plaintiffs' First Amended Complaint. (ECF No. 84.)

*/s/ Emily K. Anglewicz*
Emily K. Anglewicz (0083129)
*One of the Attorneys for Defendant Gospel Light Mennonite Church Medical Aid Plan, Inc., d/b/a. Liberty HealthShare*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was electronically filed with the Court on December 12, 2022, and served upon all parties by means of the CM/ECF system.  Parties may access this filing through the Court's system.

*/s/ Emily K. Anglewicz*
Emily K. Anglewicz (0083129)
*One of the Attorneys for Defendant Gospel Light Mennonite Church Medical Aid Plan, Inc., d/b/a. Liberty HealthShare*

19180042 _2