**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **ROCHELLE GLASGOW, et al.,** | ) | |
| | ) | **CASE NO. 5:21-cv-02001** |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **JUDGE DAVID A. RUIZ** |
| | ) | |
| **DANIEL J. BEERS, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**DEFENDANTS DRUZILLA J. ABEL AND DALE E. BELLIS'S REPLY BRIEF IN
SUPPORT OF THEIR JOINT MOTION TO DISMISS
<u>COUNTS II AND V IN PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

I.  Plaintiffs' claims for conversion and money had and received fail because Plaintiffs allege their monthly contributions were pooled and because they do not have a right to immediate possession................................................................................................. 2

    A.  *Plaintiffs allege their monthly contributions were pooled with those of other members and not placed into a segregated or identifiable fund.* ....................................................... 3

    B.  *Plaintiffs do not have a right to immediate possession of the monthly contributions they paid to Liberty.*................................................................................................................. 5

II.  Plaintiffs' claims for conversion and money had and received fail because CMS has already decided that Liberty is a valid HCSM under the ACA so they cannot establish the wrongful control element of their claims. ..................................................................... 6

III.  Plaintiffs' claims fail because they depend solely on Abel's and Bellis's status as founders and former officers or directors of Liberty. .......................................................... 9

    A.  *As to Bellis, Plaintiffs allege only that he helped found Liberty and formerly served as an officer and/or director.*................................................................................................ 9

    B.  *As to Abel, Plaintiffs do not allege that she engaged in individual conduct to amount to conversion or money wrongfully had and received.* ...................................................... 10

IV.  The Court lacks subject-matter jurisdiction over Plaintiffs' claims against Bellis and Abel; alternatively, Plaintiffs' claims are barred by res judicata...................................... 11

CONCLUSION................................................................................................................... 12

CERTIFICATE OF COMPLIANCE ................................................................................. 14

CERTIFICATE OF SERVICE .......................................................................................... 14

## INTRODUCTION

Plaintiffs assert only two claims against Defendants Druzilla J. Abel and Dale E. Bellis: conversion and money had and received. Plaintiffs do not dispute that, if their conversion claim fails, their money-had-and-received claim also fails. The two claims are "quite similar" and even "indistinguishable" from one another. *Studco Bldg. Sys. U.S., LLC v. 1st Advantage Fed. Credit Union*, 509 F. Supp. 3d 560, 575 (E.D. Va. 2020); *State of Qatar v. First Am. Bank of Va.*, 880 F. Supp. 463, 466 n.4 (E.D. Va. 1995).

Abel and Bellis's primary arguments that these two claims fail are that (1) Plaintiffs allege that the monthly contributions they seek to recover were not placed into a segregated or identifiable fund, but pooled with the contributions of other members of Gospel Light Mennonite Church Medical Aid Plan, Inc., d/b/a Liberty HealthShare ("Liberty"), and (2) Plaintiffs had no immediate right to possess the money that they paid to Liberty. Plaintiffs do not address these primary arguments until page 11 of their opposition brief. Their reticence to engage with these arguments is not surprising because Plaintiffs lack any adequate response. As discussed more fully below, the only cases Plaintiffs cite to support their claims involve corporate entities suing defendants who improperly withdrew funds from the entities' bank accounts. In other words, Plaintiffs' cases are readily distinguishable because here Plaintiffs do not allege that Abel, Bellis, or anyone else improperly withdrew funds from Plaintiffs' bank accounts.

Rather than addressing Abel and Bellis's primary arguments, Plaintiffs devote most of their opposition to trying to establish that they alleged Liberty's business resembles health insurance. (Pls.' Opp., ECF No. 93 at PageID 1548-55.) Plaintiffs, however, never explain how this allegation supports their conversion claim. In addition, Plaintiffs do not dispute the conclusion by the Centers for Medicare and Medicaid Services ("CMS") that Liberty is a valid

health care sharing ministry ("HCSM") under the Affordable Care Act ("ACA").  Plaintiffs'

claims therefore fail because they have not alleged that Liberty wrongfully assumed or exercised

control over the monthly contributions Plaintiffs made to Liberty as an HCSM.

Further, Plaintiffs' claims fail because they depend solely on Abel's and Bellis's status as

founders and former officers or directors of Liberty, which does not by itself state a claim for

relief.  Plaintiffs' opposition does not identify any conduct by Bellis personally, let alone conduct

that would give rise to his personal liability.  And while Plaintiffs point to some actions by Abel,

none of them rise to the level necessary to render her personally liable.

Finally, Plaintiffs' claims against Abel and Bellis fail because they are barred by the

settlement agreement with the Ohio Attorney General.  (Opening Br., ECF No. 85-1, at PageID

1213-14.)

For these reasons, as well as those set forth below and in Abel and Bellis's opening brief,

Plaintiffs' claims against them (Counts II and V) fail as a matter of law, their motion should be

granted, and they should be dismissed from this action.

I.    **Plaintiffs' claims for conversion and money had and received fail because Plaintiffs allege their monthly contributions were pooled and because they do not have a right to immediate possession.**

As shown in Abel and Bellis's opening brief, Plaintiffs' conversion and money-had-and-

received claims fail as a matter of law because (1) Plaintiffs allege that the monthly contributions

they seek to recover were not placed into a segregated or identifiable fund, but pooled with the

contributions of other Liberty members, and (2) Plaintiffs had no immediate right to possess the

money that they paid to Liberty.  (*See* Opening Br., ECF No. 85-1 at PageID 1207-11.)

Plaintiffs' opposition does not overcome these arguments.

A.     *Plaintiffs allege their monthly contributions were pooled with those of other members and not placed into a segregated or identifiable fund.*

It is well-settled that, "'under Virginia law, money can only be the subject of a conversion claim in limited circumstances, including when it is part of a segregated or identifiable fund.'"  *Student A v. Liberty Univ., Inc.*, -- F. Supp. 3d --, 2022 WL 1423617, at *8 (W.D. Va. May 5, 2022) (quoting *NorthStar Aviation, LLC v. Alberto*, 332 F. Supp. 3d 1007, 1020 (E.D. Va. 2018)).  And a "segregated or identifiable fund is one *separate from the defendant's general funds* and one to which plaintiff is entitled."  *Id.* (emphasis added).  Plaintiffs' First Amended Complaint (ECF No. 76, the "Complaint") fails to satisfy this required element of a conversion claim.

The Complaint admits that the monthly contributions Plaintiffs seek to recover were *not* kept in a segregated fund, but were commingled with the contributions of tens of thousands of other members of Liberty.  (*See* Compl., ¶ 72 (alleging that Liberty "make[s] payments to members from a *pool of money*") (emphasis added).)  Plaintiffs' opposition reiterates this allegation by arguing that they "have pleaded that their money and the money of other putative class members *were pooled in a fund* that represented the 'sharing power' of a valid HCSM, which would go towards paying members' medical bills."  (Pls.' Opp., ECF No. 93, at PageID 1560 (emphasis added).)[1]  A "pool of money" consisting of the contributions of tens of thousands of members is the antithesis of a segregated fund into which only the money of an

_____

[1] In a footnote, Plaintiffs assert that their monthly contributions "were purportedly treated separately from each other like a typical health insurance plan," quoting an allegation related to the definition of Annual Unshared Amount, which Plaintiffs assert "operates like a typical health insurance deductible."  (Pls.' Opp., ECF No. 93, at PageID 1560 n.5 (quoting Compl., ¶ 74).)  A deductible is the amount an insured pays healthcare providers before the insurance kicks in.  That the Annual Unshared Amount is tracked therefore says *nothing* about whether Plaintiffs' monthly contributions were kept in a segregated or identifiable fund.

individual member resides.  For example, Virginia courts dismissed conversion claims against a university because the tuition and activity fees that students paid were placed into a general fund. *See Student A*, 2022 WL 1423617, at *9; *Murray v. Liberty Univ., Inc.*, No. 6:22-cv-00025, 2022 WL 4082483, at *7 (W.D. Va. Sept. 6, 2022).  The same rationale applies here to the "pool of money" into which Plaintiffs allege their monthly contributions were placed.  Plaintiffs' conversion claim should therefore likewise be dismissed.

Plaintiffs attempt to distinguish *Student A* based on the incorrect statement that the student plaintiffs "did not claim the university engaged in any wrongful exercise over the students' money," when that is exactly what those plaintiffs alleged.  (Pls.' Opp., ECF No. 93, PageID 1560.)  In *Student A*, the Plaintiffs "alleged that Liberty [University] unlawfully retained 'the fees paid by Plaintiffs and other Class members.'"  2022 WL 1423617, at *9.  Thus, contrary to Plaintiffs' assertion, an allegation of "wrongful exercise" over money does not obviate the requirement that a claim based on conversion of money must involve a segregated or identifiable fund.  *Id.*  As in *Student A*, Plaintiffs here do not allege that their monthly contributions were meant to be kept as a separate, segregated fund, so their conversion claim fails.  *Id.*; *see also Murray*, 2022 WL 4082483, at *7.

The cases Plaintiffs rely on do not support a different result.  None of them hold that the money a plaintiff pays into a commingled corporate account can serve as the basis for a conversion claim.  Instead, Plaintiffs' authorities merely hold that a corporation may pursue a conversion claim against its executives who improperly paid themselves or withdrew money from a corporate bank account.  *See NorthStar Aviation, LLC*, 332 F. Supp. 3d at 1012 (holding that a corporation stated a conversion claim against its former CEO for allegedly paying himself unauthorized bonuses and withdrawing significant sums of money from the corporate bank

4

accounts); *Opportunities Dev. Grp., LLC v. Andruss*, No 1:14-cv-62, 2015 WL 2089841, at *9 (E.D. Va. Apr. 30, 2015) (former COO accused of improperly withdrawing money from the company's bank account).  Similarly, in *Raleigh Radiology, Inc. v. Eggleston & Eggleston, P.C.*, which Plaintiffs also cite, the alleged conversion related to a defendant paying itself when it "had full access to, and control of, [the plaintiff's] bank accounts."  No. 7:09-CV-003334, 2009 WL 3760492, at *1 (W.D. Va. Nov. 10, 2009).  In none of these cases were the plaintiffs trying to recover pooled money that had been placed into a general fund.

As described above, here, Plaintiffs allege their contributions were not placed into a segregated or identifiable fund.  Those contributions thus cannot serve as the basis for a conversion claim.

### B. *Plaintiffs do not have a right to immediate possession of the monthly contributions they paid to Liberty.*

Plaintiffs' conversion claim separately fails because they are not "'entitled to the immediate possession'" of the monthly contributions they paid to Liberty, as required to state a claim under Virginia law.  *Jones v. Bank of Am. Corp.*, No. 4:09-cv-162, 2010 WL 6605789, at *5 (E.D. Va. Aug. 24, 2010) (quoting *Economopoulos v. Kolatis*, 259 Va. 806, 528 S.E.2d 714, 719 (Va. 2000)); *see also* Opening Br., ECF No. 85-1, at PageID 1209-10.  The Complaint does not allege that Plaintiffs have an immediate right to possess their monthly contributions.  (*See, e.g.*, Compl., ¶¶ 217-223.)

Plaintiffs' lone authority on this issue is *Raleigh Radiology*.  That case is unrelated to Plaintiffs' claims here, however, because, again, it involved a defendant who "had full access to, and control of, [the plaintiff's] bank accounts" and allegedly unilaterally withdrew overcharges. *Raleigh Radiology,* 2009 WL 3764092, at *1, 4.  Unlike Plaintiffs here, the plaintiff in *Raleigh*

*Radiology* pleaded facts to support that it "had a right to its funds at the moment of the alleged conversion." *Id.*

Here, in contrast, Plaintiffs concede that, rather than an immediate right to possess their monthly contributions, those contributions are used "to pay for medical expenses and the medical expenses of other Class Members" after they arise and to "pay for the reasonable administration costs of the plans." (Compl. ¶ 217.)  In addition, the Sharing Guidelines, which Plaintiffs attached as an exhibit to the Complaint, state that the "[m]onthly contributions are voluntary gifts and are not refundable" as "[e]ach member is a self-pay patient who sends monthly contributions to assist another member who has medical expenses." (Liberty 2021 Sharing Guidelines, ECF No. 76-2, PageID 1118 (attached as Exhibit B to Plaintiffs' First Amended Complaint).)

Plaintiffs' conversion claim thus fails as a matter of law for the additional, independent reason that Plaintiffs have not alleged in the Complaint that they had an immediate right to possess the monthly contributions.  Indeed, the allegations in the Complaint establish that Plaintiffs have no such right to possess, let alone immediately possess, the money paid to Liberty.

## II.   Plaintiffs' claims for conversion and money had and received fail because CMS has already decided that Liberty is a valid HCSM under the ACA so they cannot establish the wrongful control element of their claims.

Abel and Bellis's motion to dismiss showed that Plaintiffs' claims against them also failed because CMS already decided that Liberty is a valid HCSM under the ACA.  In their opposition, Plaintiffs don't dispute CMS's conclusion.  Instead, Plaintiffs point to statements in the letter that its "determination is limited to Gospel Light Mennonite Church Medical Aid Plan's [i.e., Liberty's] compliance with standards relevant to an organization being considered a health care sharing ministry for subpart G of 45 CFR part 155." (Pls.' Opp., ECF No. 93,

PageID 1554.) Those statements, however, highlight the deficiencies in Plaintiffs' conversion and money-had-and-received claims.

As Plaintiffs acknowledge, CMS's determination that Liberty is a valid HCSM enabled Liberty's individual members to obtain a certificate of exemption from compliance with the ACA's individual health insurance mandate. (Pls.' Opp., ECF No. 93, PageID 1554.) Plaintiffs also allege that Liberty's plans were marketed and sold as HCSM plans and that HCSMs are "exempt from various federal and state insurance regulations." (Compl. ¶¶ 43, 65.) Thus, Plaintiffs received what they bargained for: membership in an HCSM that exempted them from the ACA's individual mandate and that was itself exempt from various federal and state insurance regulations. Under these circumstances, Plaintiffs cannot establish that Liberty wrongfully assumed or exercised control over the monthly contributions Plaintiffs made to Liberty as an HCSM. *See Stallard v. Bank of Am., N.A.*, 137 F. Supp.3d 867, 874-76 (E.D. Va. 2015) (defendant did not wrongfully exercise authority over plaintiff's property when it charged plaintiff interest according to a banking agreement). Their conversion and money-had-and-received claims therefore fail as a matter of law and should be dismissed.

Plaintiffs, however, fixate on whether Liberty sells health insurance, apparently believing that if they allege Liberty's business looks like insurance, then it can't be an HCSM. But whether Liberty's business might resemble insurance is irrelevant. Plaintiffs' opposition never explains how their allegation that Liberty's business is purportedly similar to insurance supports their conversion and money-had-and-received claims. While Plaintiffs block quote the discussion of what constitutes insurance from a Kentucky case, *Commonwealth of Kentucky v. Reinhold*, and a Northern District of Georgia case, *LeCann v. The Alierra Cos., Inc.*, neither of those cases addressed the merits of a conversion or money-had-and-received claim. *Reinhold*

was a state enforcement action against Medi-Share for the unauthorized sale of insurance. *Commonwealth of Kentucky v. Reinhold*, 325 S.W.3d 272, 275 (Ky. 2010).  And *LeCann* addressed whether Aliera Companies, Trinity Healthshare, and Unity Healthshare were engaged in insurance in the context of deciding a motion to compel arbitration.  *LeCann v. The Aliera Cos., Inc.*, No. 1:20-cv-2429-AT, 2021 WL 255942, *1 (N.D. Ga. June 22, 2021).  *Reinhold* and *LeCann* are therefore inapposite.[2]

Thus, Plaintiffs' allegation that Liberty's business looks like health insurance is, at most, "[m]erely pleading facts that are consistent with a defendant's liability," which "is insufficient" to survive a motion to dismiss.  *Patterson v. Novartis Pharm. Corp.*, 451 Fed. Appx. 495, 497 (6th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).  It is like the allegation of parallel conduct at issue in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  In that case, the plaintiffs alleged that the defendants engaged in "parallel business conduct," which was consistent with an antitrust conspiracy, but they failed to allege the actual agreement necessary to establish a conspiracy."  *Id.* at 552, 554-57, 564.  The Supreme Court therefore held that the plaintiffs' conspiracy claim "comes up short."  *Id.* at 564.

Here, Plaintiffs' conversion and money-had-and-received claims likewise fall short. CMS has already decided that Liberty is a valid HCSM under the ACA, so Plaintiffs cannot

---

[2] The brief filed by the New Mexico Office of Superintendent of Insurance that Plaintiffs attached to their opposition and the Maryland Insurance Commissioner's opinion appended to that brief, which Plaintiffs refer to in footnote 4, are equally inapposite.  Both involve state enforcement actions, not claims for conversion or money had and received.  Furthermore, the Maryland Commissioner's opinion punts on whether the respondents are exempt from insurance regulation, reserving that issue for a future date because "rulings on the interpretation and application of specific criteria" for that state's exemption for voluntary religious publication arrangements "is premature."  (ECF No. 93-1, PageID 1608.)  The New Mexico brief is even further afield because, as it states, "New Mexico has not created a 'safe harbor' statute which would exempt a health care sharing ministry from regulation by the Superintendent."  (ECF No. 93-1, PageID 1571.)

establish that Liberty wrongfully exercised control over their monthly contributions.  Plaintiffs'
claims should accordingly be dismissed.

### III.    Plaintiffs' claims fail because they depend solely on Abel's and Bellis's status as founders and former officers or directors of Liberty.

Abel and Bellis's motion to dismiss also established that, even setting aside the
deficiencies in the conversion and money-had-and-received claims, Plaintiffs' claims against
Abel and Bellis still fail for the separate reason that they are based on Abel's and Bellis's status
as former officers or directors of Liberty.  (Opening Br., ECF 85-1 at PageID 1212-13.)  Under
Virginia law, "[i]t is well-established that, in general, an individual corporate officer or director
is not subject to personal liability simply by virtue of his office[.]"  *Stafford Urgent Care, Inc. v.*
*Garrisonville Urgent Care, P.C.*, 224 F. Supp. 2d 1062, 1065 (E.D. Va. 2002); *see also* Opening
Br., ECF No. 85-1, at PageID 1212-13.  But the Complaint seeks to do just that as to Bellis and
Abel.  Plaintiffs' opposition does not overcome this well-settled law.

#### A.    *As to Bellis, Plaintiffs allege only that he helped found Liberty and formerly served as an officer and/or director.*

Plaintiffs purport to "have gone through particular detail in describing . . . [Bellis's and
Abel's] specific roles in the scheme" that purportedly made Liberty a fraudulent HCSM.  (Pls.'
Opp., ECF No. 93, at PageID 1552.)  But as to Bellis, Plaintiffs' laundry list of "detailed"
bulleted items is limited to his involvement in helping to found Liberty in 2012.  (*See id.* at
PageID 1556-57 (citing Compl., ¶ 49).)  Indeed, Plaintiffs' bullet-point list on pages 9-10 of their
opposition never actually identifies Bellis by name.  (*Id.*)  And "collective references to 'the
defendants' do[ ] not meet the pleading requirements of *Twombly* and *Iqbal* because it fails to
give each defendant sufficient notice of the misconduct alleged against him."  *Brockman v.*
*Chevron USA, Inc.*, No. 1:09-cv-656, 2010 WL 11538073, *2 (S.D. Ohio Aug. 11, 2010).

Plaintiffs thus have failed to "plead facts demonstrating a particular member's culpability in the [corporation's] tortious conduct that extends beyond that person's mere status as a member of the company."  *McFarland v. Va. Ret. Servs. of Chesterfield, L.L.C.*, 477 F. Supp. 2d 727, 740 (E.D. Va. 2007); *see also* Opening Br., ECF No. 85-1, at PageID 1212-13.  Bellis cannot be held liable just because he helped to found Liberty and previously served as an officer and/or director. The claims against Bellis should therefore be dismissed for this additional reason.

### B.  *As to Abel, Plaintiffs do not allege that she engaged in individual conduct to amount to conversion or money wrongfully had and received.*

Other than referring to Abel's status as a director or officer of Liberty, the only specific conduct by Abel referred to in Plaintiffs' opposition relates to her purportedly failing to disclose various relationships among the Defendants.  (Pls.' Opp., ECF No. 93, at PageID 1556-57.) There is no explanation of how such conduct forms the basis for Plaintiffs' claims that Abel is individually liable for conversion.  Abel, like Bellis, cannot be held liable just because she was an officer and/or director of liberty.

To assert a conversion claim against a company executive personally, the plaintiff must allege that the executive "personally withheld" the property at issue.  *Ford v. Wellmont Health Sys.*, No. 2:09cv00055, 2009 WL 4544099, at *7-8 (W.D. Va. Nov. 30, 2009) (dismissing conversion claim against individual defendant because "the Complaint is devoid of any allegations that [the individual defendant] personally withheld any property rightfully belonging to [the plaintiff]").  Plaintiffs have not pointed to any allegation that Abel personally withheld their property.  Accordingly, the claims against Abel should also be dismissed for this additional reason.

**IV.    The Court lacks subject-matter jurisdiction over Plaintiffs' claims against Bellis and Abel; alternatively, Plaintiffs' claims are barred by res judicata.**

Finally, Plaintiffs' claims against Abel and Bellis are moot or barred by the settlement agreement with the Ohio Attorney General, which was attached to their opening brief. (Settlement Agreement, ECF 85-3.)  Plaintiffs, however, argue that their claims are not moot or barred by res judicata because the OAG's Charitable Law Section, rather than the Consumer Protection Section, investigated the claims against Liberty.  (Pls.' Opp., ECF No. 93, at PageID 1563.)  They assert that res judicata does not apply because the Charitable Law Section's investigation "did not purport to investigate whether Liberty was selling illegal or unauthorized health insurance while masquerading as an HCSM[.]"  (*Id.*)  This assertion ignores, as pointed out in the opening brief (ECF No. 93 at PageID 1214), that the OAG investigated the conduct of Abel and Bellis as board members and officers of Liberty and specifically released them from future liability.  To the extent that their conduct is subsumed within Counts II and V of Plaintiffs' Complaint, those claims against Abel and Bellis are barred by res judicata.

Plaintiffs' claims for conversion and money had and received are premised on allegations regarding the purported misuse of funds at Liberty.  (*See, e.g.,* Compl. ¶¶ 170, 219.)  Contrary to Plaintiffs' assertions, the OAG's Charitable Law Section already investigated this alleged conduct before entering into the settlement agreement with Liberty, which included Abel and Bellis.  In particular, the OAG investigated whether property held by Liberty for "charitable, religious or educational purposes has been and is being properly administered in accordance with fiduciary principles" established by Ohio courts and statutes, and whether Liberty "properly complied with the requirements of R.C. Chapter 1716 regarding the conduct of charitable

11

solicitations." (Liberty Settlement Agreement, Exhibit A to Opening Br., ECF No. 85-3,

¶ 1(H)).[3]

The OAG's investigation thus encompassed Plaintiffs' allegations in their conversion and

money-had-and-received claims so that these claims are barred by res judicata. *See, e.g.*, *State ex*

*rel. Fisher v. Okum's Furniture & Appliance Co., Inc.*, 1st Dist. Hamilton No. C-940254, 1995

WL 566633, at *6 (concluding that res judicata barred a subsequent lawsuit against a private

party where the OAG had entered into a settlement agreement with that defendant); *see also*

Liberty's Br., ECF No. 86-1 at PageID 1269 (citing cases).

As stated in Abel and Bellis' opening brief, Liberty's arguments for dismissal because the

Court lacks subject matter jurisdiction pursuant to Civ.R. 12(b)(1), or that Plaintiffs' claims are

barred by res judicata pursuant to Civ.R. 12(b)(6), apply with equal force to Abel and Bellis.

They therefore also incorporate the arguments in Liberty's reply brief in support of its motion to

dismiss as if set forth here.

## CONCLUSION

For these reasons and those set forth in their opening brief, Abel and Bellis request that

this Court dismiss Counts II and V against them in Plaintiffs' First Amended Complaint and

thereby dismiss them from this matter.

---

[3] Plaintiffs suggest elsewhere in their opposition that Abel and Bellis should be liable for
conversion and money had and received only because they were named individually in the
settlement agreement with the OAG. (Pls.' Opp., ECF No. 93, at PageID 1549.)  To the
contrary, it is common for directors and officers to be named in settlement agreements with state
investigators.

Dated:  January 25, 2023      Respectfully submitted,

*/s/ Michael J. Zbiegien, Jr.*
Michael J. Zbiegien, Jr.
David H. Thomas
Cary M. Snyder
**TAFT STETTINIUS & HOLLISTER LLP**
200 Public Square, Suite 3500
Cleveland, OH 44114-2302
Phone: 216-241-2838
Fax: 216-241-3707
mzbiegien@taftlaw.com
dthomas@taftlaw.com
csnyder@taftlaw.com

*Counsel for Defendant Dale E. Bellis*


*/s/ Karen L. Giffen*
Kerin Lyn Kaminski
Karen L. Giffen
Courtney L. Bow
**PEREZ & MORRIS, LLC**
1300 East Ninth Street
Suite 1600
Cleveland, OH 44114
Phone: 216-621-5161
kkaminski@perez-morris.com
kgiffen@perez-morris.com
cbow@perez-morris.com

*Counsel for Defendant Druzilla J. Abel*

13

## CERTIFICATE OF COMPLIANCE

I hereby certify that this case has not been assigned to a track, and that this memorandum adheres to the 20-page limit set forth in Local Rule 7.1.

/s/ Michael J. Zbiegien, Jr.
Michael J. Zbiegien, Jr.

*One of the Attorneys for*
*Defendant Dale E. Bellis*

## CERTIFICATE OF SERVICE

A copy of the foregoing was filed electronically on January 25, 2023.  Notice of this filing will be sent to all parties through the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Michael J. Zbiegien, Jr.
Michael J. Zbiegien, Jr.

*One of the Attorneys for*
*Defendant Dale E. Bellis*

76052276v8

14