IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ROCHELLE GLASGOW, et al.,** | ) | CASE NO. 5:21-cv-02001-DAR |
| | ) | |
| **Plaintiffs,** | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | **PLAINTIFFS' MEMORANDUM OF LAW** |
| | ) | **IN REPLY TO VENDOR DEFENDANTS'** |
| **DANIEL J. BEERS, et al.,** | ) | **OPPOSITION TO PLAINTIFFS' MOTION** |
| | ) | **FOR LEAVE TO FILE SUPPLMENTAL** |
| **Defendants.** | ) | **PLEADINGS PURSUANT TO RULE 15(D)** |
| | ) | |
| | ) | |

In response to Plaintiffs' Motion for Leave to File Supplemental Pleadings Pursuant to Rule 15(d) (ECF 96), Defendants Thomas Fabris, Brandon Fabris, Daniel J. Beers, Daniel Beers II, Ronald Beers, The Medical Cost Savings Solutions, LTD ("MCS"), and Cost Sharing Solutions, LLC ("CSS") ("Vendor Defendants") in one pleading filed three (3) meritless motions in opposition (ECF 97) ("Motions"). Each of the Motions is addressed below.

**I. The Publication of the Article Is A Material Transaction, Occurrence, or Event**

Vendor Defendants first argue that Plaintiffs have not addressed how the Proposed Supplement Complaint (ECF 96-1) ("Proposed Supplemental Complaint") "provides evidentiary support to the facts or allegations in their First Amended Complaint." Motions at 3. Plaintiffs, however, are not required to plead "evidentiary support" at this stage of the pleadings. *Rose v. Hartford Underwriters Ins. Co*., 203 F.3d 417, 420 (6th Cir. 2000). Fed. R. Civ. P. 15(d) ("Rule 15(d)") permits courts to grant leave to a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The Proposed Supplemental Complaint does exactly that, setting out the publication of a plainly relevant article that occurred subsequent to the filing of Plaintiffs' First Amended Complaint (ECF

76) ("First Amended Complaint"). The publication of the exposé is a material transaction, occurrence, or event that happened after the date of the filing of Plaintiffs' First Amended Complaint and sheds additional light on Plaintiffs' allegations. *See* § II, *infra*.

Moreover, the Court should consider the contents of Proposed Supplemental Complaint because (i) Plaintiffs' First Amended Complaint at ¶127 specifically refers to the article's anticipated publication, (ii) there is no ground for claiming "undue delay" because Plaintiffs' motion for leave was filed only ten (10) days after the article was published, (iii) the article will aid the Court in reaching a just decision on the pending motions, and (iv) Defendants' motions to dismiss on jurisdictional grounds "represents a factual attack as it is challenging the factual existence of this Court's subject matter jurisdiction," and, as such, "this Court 'may look beyond the jurisdictional allegations in the complaint and consider whatever evidence is submitted.'" *Whittiker v. Deutsche Bank Nat. Trust Co.*, 605 F. Supp. 2d 914, 924 (N.D. Ohio 2009); ECF 79 at 4 (quoting *Humphrey v. U.S. Attorney General's Office*, 279 Fed. Appx. 328, 331, 2008 WL 2080512, at *3 (6th Cir. 2008)).

## II. The Proposed Supplemental Complaint Sheds Additional Light on Defendants' Misconduct and Demonstrates the Superiority of a Nationwide Class Action

Defendants next contend that the Proposed Supplemental Complaint "does not contain any nexus to any current or previously pled facts or claims." Motions at 2. The content of the recently published article speaks for itself, and plainly contains numerous connections between the facts and claims pled in the First Amended Complaint. The following chart illustrates examples of just a few of these numerous links:

| First Amended Complaint (ECF 76) | Proposed Supplemental Complaint (ECF 96-1) |
|---|---|
| ¶12 ("This Court has subject matter jurisdiction over this action . . . because the matter in controversy exceeds $5 million, | P. 3 ("Four years after its launch in 2014, the ministry enrolled members in almost every state and collected $300 million in annual revenue. |

| | |
|---|---|
| exclusive of interest and costs, and is a class action in which Plaintiffs seek relief on behalf of a nationwide class . . . ." | Liberty used the money to pay at least $140 million to businesses owned and operated by Beers family members and friends over a seven-year period, the investigation found."). |
| ¶24 ("Because Defendant Daniel J. Beers exerted *de facto* control over Liberty's day-to-day and financial transactions, he owed Liberty, its members, Plaintiffs, and the other Class Members a fiduciary duty of care and loyalty at all relevant times."). | P. 11 ("Both Beers and Fabris said they never worked for Liberty, but interviews, photos, emails and other records reveal the two were key figures in Liberty's founding and growth. Former employees told ProPublica that Beers attended Liberty executive meetings and had access to the ministry's bill processing offices, which held members' private medical information. When an executive voiced concern about how much Liberty was paying to Cost Sharing Solutions, Beers later approached him and yelled at him for raising questions, according to a complaint filed with Ohio fraud investigators."). |
| ¶91 ("The Individual Defendants, along with their long-time business partners, contrived, formed, and operated Liberty and its affiliated enterprises as a means to obtain exorbitant illegal payments and profits in a similar fashion to the BHS scheme, and they misused and continue to misuse Liberty to cause consumers like Plaintiffs and Class Members to pay thousands or tens of thousands of dollars in premiums each year that were and are then funneled to Liberty and its principals."). | P. 12 ("Echoing a strategy used by the Brotherhood, Liberty recorded its finances in two ways. . . . The hypothetical accounts accomplished two things, according to current and former employees. They gave the appearance that Liberty was sending far more money to medical providers than it was, and they gave Liberty cover from regulations. If Liberty was pooling members' funds into bank accounts, insurance commissioners could argue that the company was selling insurance. The software, however, made it look as if each person had an individual account. In reality, Liberty controlled every dollar."). |
| ¶97 ("In furtherance of Liberty's scheme to illegally divert the premiums it collected to the Affiliated Defendants, Liberty has regularly and routinely delayed and denied payment on claims that are covered by the plans."). | P. 17 ("Data published by the Massachusetts' insurance board shows that Liberty spent about 56 cents of every dollar it took in from members in that state on medical expenses in 2019 and 2020, a figure that would be scandalous if it were an insurance company."). |
| ¶138 ("The Individual Defendants have intentionally operated all alter-ego corporations in a manner that left the alter-ego corporations without assets sufficient to satisfy the claims of Plaintiffs and the Class, by taking complete control and possession of the alter-ego corporations' revenues and receivables as soon as they were received or accrued."). | P. 3 ("The family then funneled the money through a network of shell companies to buy a private airline in Ohio, more than $20 million in real estate holdings and scores of other businesses, including a winery in Oregon that they turned into a marijuana farm. The family calls this collection of enterprises 'the conglomerate.'"). |

3

| | P. 14 ("In all, the Beers family set up at least 35 companies in six states in seven years."). |
|---|---|

All of these connections bear directly on Plaintiffs' contention that a national class action is a superior vehicle for obtaining justice for current and former Liberty members. In addition, Defendants' arguments that Plaintiffs' claims on behalf of a nationwide class were resolved by a purported settlement with the Ohio Attorney General are meritless for the reasons previously set forth in Plaintiffs' Opposition to the Vendor Party Motions to Dismiss (ECF 89).

## III. Defendants' Motions to Strike and for Sanctions Are Baseless

Defendants move to strike the Proposed Supplemental Complaint as a "frivolous, unwarranted attempt to include inflammatory attachments without any nexus to Plaintiffs' alleged claims." Motions at 3. As explained above, the Proposed Supplemental Complaint contains numerous nexuses to the First Amended Complaint. More importantly, there is no pleading on file to strike, as Plaintiffs have only sought leave to file the Proposed Supplemental Complaint, which the Court may in its discretion deny. Rule 15(d); *Schuckman v. Rubenstein*, 164 F.2d 952, 958–59 (6th Cir. 1947) (the granting of a motion to file a supplemental pleading is within the discretion of the trial court). Rather than simply oppose Plaintiffs' request for leave to file the Proposed Supplemental Complaint, Defendants have instead needlessly caused additional motion practice by improperly and prematurely moving to strike the proposed pleading.

Finally, the Vendor Defendants request their attorney fees for being "forced to respond" to Plaintiffs' request for leave to file the Proposed Supplemental Complaint. Motions at 3. This request for sanctions is similarly baseless and serves only to undermine Defendants' contention that the Proposed Supplemental Complaint lacks a nexus to Plaintiffs' First Amended Complaint. Moreover, as described above in § II, numerous nexuses exist between the Proposed Supplemental Complaint and the First Amended Complaint. Vendor Defendants also fail to explain why they

4

were "forced to respond" to the Proposed Supplemental Complaint despite it purportedly lacking any nexus to the First Amended Complaint. *Id.*

Finally, Fed. R. Civ. P. 11(c)(2) imposes procedural requirements on requests for sanctions that were wholly ignored by Vendor Defendants in making their request for fees:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

The Vendor Defendants (i) did not make their motion for sanctions separately from the other Motions, and (ii) did not serve the motion for sanctions under Fed. R. Civ. P. 5 prior to filing it. As such, Vendor Defendants' motion for fees is itself sanctionable and should be denied. *Patterson v. United Healthcare Ins. Co.*, 541 F. Supp. 3d 812, 816 (N.D. Ohio 2021) (sanctioning counsel for failing to serve a request for sanctions prior to filing and thereby attempting to "avoid the safe harbor's prohibition against presenting any paper threatening sanctions to the Court.") (citing Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment ("[T]he filing of a motion for sanction is itself subject to the requirements of the rule and can lead to sanctions.")).

**IV. Conclusion**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Vendor Defendants' Motions and grant Plaintiffs leave to file their proposed First Supplemental Complaint.

DATED: March 21, 2023  Respectfully Submitted,

**LAW OFFICE OF GEORGE W. COCHRAN**

/*s/* *George W. Cochran*
George W. Cochran (0031691)
1981 Crossfield Circle
Kent, OH 44240
Telephone: (330) 607-2187
Facsimile: (330) 230-6136
lawchrist@gmail.com

**JOHNSON FISTEL, LLP**

MICHAEL I. FISTEL, JR. (admitted *pro hac vice*)
WILLIAM W. STONE (admitted *pro hac vice*)
OLIVER S. TUM SUDEN (admitted *pro hac vice*)
40 Powder Springs Street
Marietta, GA 30064
Telephone: (470) 632-6000
Facsimile: (770) 200-3101
MichaelF@johnsonfistel.com
WilliamS@johnsonfistel.com
OliverT@johnsonfistel.com

*Attorney for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 21, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses noted on the Electronic Mail Notice List.

*/s/ George W. Cochran*
George W. Cochran (0031691)
